ADAMS EXPRESS COMPANY, Appellant, *v.* JOHN RENO, CLINTON RENO, INTERPLEADER, Respondent.

1. *Practice, civil—Pleadings — Garnishment—Continuance, affidavit for.*—An affidavit for continuance in the trial of an interplea joined under an attachment suit, which affidavit was entitled as in the cause of the plaintiffs against garnishees in the attachment, was properly refused.

2. *Contracts—Unlawful consideration — Money may be recovered back, when.*—Money paid out to be used in efforts to procure pardon for a criminal may be recovered where it appears the efforts were not made and the agreement was unexecuted. The rule that money paid for an unlawful consideration cannot be recovered back applies to executed and not to executory contracts.

3. *Agent, special — Power of to bind a principal.* — An agent instructed to pay over money on a certain contingency to a particular person, cannot bind his principal by payment to a different person before the contingency is carried out.

*Appeal from Cole Circuit Court.*

*Lay & Belch*, for appellant.

All the evidence of the agreement between Ballinger and Clinton Reno to obtain the pardon of John Reno, and tending to show that the money was sent to Jefferson City to be paid to Ballinger alone, was wholly inadmissible in support of the claim of the interpleader. The agreement itself, and the object and purpose of sending the money to this State, were against public policy and contrary to good morals, and a party basing his cause of action upon such a state of facts, and alleging his own turpitude, cannot be heard in a court of justice. (Chit. Cont. 657, 673; Adams, Adm'r of Rose, v. Barrett, 5 Ga. 404; Fales *et al.* v. Mayberry, 2 Gall., U. S., 560; Bartle v. Coleman, 4 Pet. 184; Dixon v. Olmstead, 9 Verm. 310; Randall v. Howard, 2 Black, 585; Clippenger v. Hepbaugh, 5 Watts & Serg. 315; Wooten *et al.* v. Miller, 7 Sm. & M. 380; Armstrong v. Toler, 11 Wheat. 258; Roby v. West, 4 N. H. 290; Ellsworth *et al.* v. Mitchell, 31 Me. 247; Dix v. Van Wyck, 2 Hill, 522; Rose *et al.* v. Truax, 21 Barb., N. Y., 361; Guenther v. Dewein, 11 Iowa, 133; White v. Hunter, 3 Foster, N. H., 128; Swan v. Scott, 11 Serg. & R. 155; Clugas v. Penaluna, 4 T. R. 251, 466; Warnell v. Reed, 5 T. R. 304; Kribben v. Haycraft, 26 Mo. 396; Hatzfield v. Gulden, 7 Watts, 152.)

*H. B. Johnson*, for respondent.

There is no doubt that the arrangement between Ballinger and Reno in regard to the pardon is, as a contract, void as against public policy. (Kribben v. Haycraft, 26 Mo. 396.) But where a person advances money on an unexecuted contract, though the contract be void as against public policy, he may recover it back at any time before the money is delivered or the contract fully executed. (Skinner v. Henderson, 10 Mo. 205; Humphreys v. Magee, 13 Mo. 435; Gowan v. Gowan, 30 Mo. 472; Mount v. Waite, 7 Johns. 434; Vischer v. Yates, 11 Johns. 23; Wheeler

v. Spencer, 15 Conn. 28 ; McAlister v. Hoffman, 16 Serg. & R.
147; Rucker v. Wynne, 2 Head, 617; House v. Kenney, 46 Me.
94 ; Shannon v. Banner, 10 Iowa, 210.)

WAGNER, Judge, delivered the opinion of the court.

This was a suit instituted by attachment, by the plaintiff, an
incorporated company, against John Reno, a convict in the Missouri penitentiary, to recover damages for a robbery alleged to
have been committed by him at Seymour, Indiana. John Reno
appeared by attorney, and filed an answer denying all the material
allegations in the petition. Over $4,000 in United States currency was attached in the hands of the Jefferson City Savings
Association as his property. Clinton Reno appeared and filed
his interplea, claiming the money attached as his property. To
this interplea there was an answer filed, and upon the issue as
thus made up the cause was tried. After hearing the evidence,
the jury rendered their verdict, finding that the property belonged
to the interpleader, and upon this verdict the court gave judgment in his behalf. From that finding and judgment the plaintiff appealed to this court.

The appellant complains in the first instance of the action of
the court in refusing to grant a continuance. When the cause
was called for trial an affidavit was submitted praying for a continuance on the ground of the absence of material witnesses,
whose testimony could not be obtained or produced at the trial at
that term. The affidavit was entitled "The Adams Express Co.,
plaintiff, against John Reno, Clinton Reno, D. A. Wilson, P. T.
Miller and Philip E. Chappell, garnishees, defendants."

The court overruled the motion for a continuance, for the
reason that it did not appear that the affidavit had any reference
to the controversy pending between the appellant and the interpleader. The affidavit was distinctly entitled as in the cause of
the appellant against John Reno and the garnishees in that
action ; and as the issue joined on the interplea constituted
a wholly separate cause, there was nothing to show that the
affidavit was made with any reference to this proceeding. Under

such circumstances we cannot say that the court erred or abused its discretion in refusing the continuance.

Upon the merits the facts seem to be these: John Reno was sentenced to the Missouri penitentiary for robbing the county treasury of Davies county. The County Court of Davies county authorized Ballinger, the sheriff of that county, to submit a proposition to Clinton Reno, that if he (Clinton) would pay the sum of $5,000 toward reimbursing the county of the amount robbed, then the judges of the County Court and Ballinger would use their influence with the governor to procure a pardon for John. In accordance with this proposition, Clinton Reno, who resided in Indiana, endeavored to raise the $5,000 for the purpose contemplated, but could only obtain the sum of $4,400. This amount he sent by his sister Laura to this State, thinking that Ballinger might be induced to take it and effect the pardon. He instructed Laura to bring the money back with her in case the pardon was not procured, and to pay it to no one but Ballinger. When she arrived at Jefferson City she did not see Ballinger, and nothing was done toward a pardon; and when she was about to return home she was persuaded by Wilson, the warden of the penitentiary, to leave the money with him, and that Ballinger might come and accept it. She informed him of Clinton's instructions as to bringing the money back, but was finally induced to leave it. Wilson gave her a receipt for it, and then deposited it in the bank for use of John Reno. When Laura returned home Clinton was greatly displeased with the disposition she had made of the money, and expressed his decided disapprobation of her course in disobeying his instructions. John Reno was never pardoned, nor does it appear that any efforts were made looking to that end. It is now insisted that, as the money was to be used for an illegal purpose, the law will not assist Clinton to recover it, or in anywise help him in regaining its possession.

No principle is better settled than that a contract in violation of law or against public policy cannot be enforced in the courts of the country. In all such cases the courts will not interfere, and the parties will be left where their conduct has placed them. An agreement to pay a certain sum for the exercise of influence

in procuring a pardon or the commutation of a sentence is utterly void as against public policy, and incapable of enforcement in the courts. (Kribben v. Haycraft, 26 Mo. 396.) But an examination of the cases will show that this rule applies to executed contracts and agreements. Where parties have been guilty of turpitude in entering into illegal agreements, or have performed acts which are stigmatized as against public policy, the courts of the country furnish them no redress. But if propositions have merely been made contemplating such purposes, but nothing has been done to finally accomplish or consummate them, they stand in a very different attitude. The moral stain has not attached, and the guilt has not been carried out. The doctrine applies solely to executed contracts, but I have never seen any case which would warrant its application to contracts which are executory.

Betting on horse-racing is illegal, and it has been held that where a person deposits money with a stakeholder, to be held to abide the result of a horse-race, he may institute a common-law action and recover the same at any time before the bet has been determined, and that the recovery may be without reference to any provision in the act concerning gaming. (Humphreys v. Magee, 13 Mo. 435.)

In the case of Skinner v. Henderson, 10 Mo. 205, the question was directly presented, and it was decided that an action would lie to recover back money paid under an illegal agreement, at any time before the agreement was executed. In the opinion the court used this language: "The rule in respect of money paid on illegal contracts appears, in general, to be that money so advanced may be recovered in an action for money had and received, while the contract remains executory, because a violation of the law is thereby prevented; but if the contract be executed, it cannot be recovered back. When both parties are *in pari delicto, melior est conditio defendentis*, not because he is favored in law, but because the plaintiff must draw his justice from pure sources. (Bul. N. P. 132; Douglas, 470.")

The same principle was adjudged in Gowan's Adm'r v. Gowan, 30 Mo. 472, it being there held that where a debtor

deposits personal property in the hands of another as bailee, with a view fraudulently to protect it from his creditors, such bailee cannot avail himself of such fraudulent intent to defeat an action brought against him by the debtor for the recovery of such property.

These citations from our court are abundantly sufficient to show the established doctrine in this State.

It is not pretended that there was any executed agreement in this case. In fact, it can hardly be said there was any agreement at all. A proposition was made by a party, but the record does not show that it was definitely accepted by the other. Five thousand dollars was the sum held out as the amount on which steps were to be taken looking to the release. Clinton was unable to raise that sum, and there is no evidence that he agreed to pay that or any other amount. He sent what money he had to see if anything could be done, but no arrangements were subsequently made, and it does not appear that the matter was ever entertained or talked of after the money was sent to this State. Clearly, there is nothing here to place him within the principle of the rule, or preclude his recovering the money.

It is further contended that Clinton parted with all interest in the money when it was deposited in the bank to the use of John, and that if he intended to retain the title he should have given notice of his dissent from the disposition that was made of it. But the parties who received the money were apprised of the special circumstances surrounding the deposit. The money was left with Wilson to be paid out in a particular event and manner to Ballinger when John was pardoned. It was placed in bank wholly for that purpose, though nominally for the use of John. But it was not the exclusive and absolute property of John, and was never intended to be so. Laura was acting as a special agent, appointed for a particular purpose, and she could not bind her principal by any act beyond her authority. (Tate v. Evans, 7 Mo. 419.) She had no authority to transfer the money to John, or to anybody else except Ballinger, and only to him upon the happening of a particular event. The law will not presume or imply a ratification on the part of Clinton of Laura's unauthor-

ized acts as to any party here contesting his right to the money. The view we have taken disposes of the instructions and renders it unnecessary to give them an especial consideration.

Upon an examination of the whole record we are decidedly of the opinion that the judgment is right and ought to be affirmed. The other judges concur.