LEMUEL Q. TYLER vs. J. HERBERT CARLISLE.

Penobscot.   Opinion March 1, 1887.

*Gambling.   Money loaned for.*

If money is lent with an understanding and intention on the part of the lender that it is to be used for gambling purposes, and it is so used, it cannot be recovered by the lender from the borrower.

ON exceptions, which were as follows :

"This was an action of assumpsit, to recover one hundred and fifty dollars, which plaintiff claimed he loaned and delivered to the defendant in money, while defendant was engaged in a game of poker.   Defendant claimed that the one hundred and fifty dollars was a poker or gambling debt, and was the amount he was indebted to the plaintiff at the end of the game.   The verdict was for the defendant.   The presiding judge instructed the jury as follows :

"That if the lender of money knows that the borrower wants it to gamble with, and lends it to him, with the express understanding and intention that it shall be so used, and it is so used, the debt thereby created is not recoverable.   The law will not lend its aid to enforce such a contract.   I do not mean to say that the mere belief on the part of the lender that the borrower intends to gamble with the money, or a knowledge, even, that he will so use it will defeat a recovery.   I do not so understand the law.   What I mean to say is, that if knowing of the illegal use which the borrower intends to make of it, the lender furnishes the money for the very purpose of enabling the borrower to gamble with it, and it is so used, the debt thereby created cannot be recovered.

"To which instruction the plaintiff excepts, and prays that his exceptions may be allowed."

*C. E. Littlefield*, for plaintiff.

R. S., sec. 10, furnishes no justification for the ruling complained of.

The necessary implication arising from this statute is that money loaned at the time and place may be recovered. The statutes are not to be extended by construction. They are to be strictly construed. *Abbott* v. *Wood*, 22 Maine, 546 ; *Com. & W. & N. R. R.*, 124 Mass 563 ; *Cleveland & al.* v *Norton*, 6. Cush. 383.

It has therefore been held that a similar statute did not affect the loan itself, but that the money might be recovered. *Peck* v. *Briggs*, 3 Denio, 107.

We say that the last clause of the instruction, or the last proposition is clearly erroneous, that it not only misled the jury but that a careful analysis demonstrates that it has no legal foundation upon which it can stand.

We think we are able to show that the origin of this language was such as does not justify its application to the case at bar, and has been carried down through the authorities by reason of an incorrect apprehension of the original precedent.

The 68 Maine case relies for authority upon *Cannan* v. *Bryce*,. 3 Barn. & Ald. 179 ; *McKinnell* v. *Robinson*, 3 M. & W. 434. and *Tracy* v. *Talmage*, 14 N. Y. 162.

An examination of the Maine case discloses the fact that the proposition in that case was nothing but a dictum, as the court there said : "There is no claim in this case for money lent." The same is true of the 14 N. Y. case, *Cannan* v. *Bryce*, and. *McKinnell* v. *Robinson*, which were there cited as authority for the language. *McKinnell* v. *Robinson* cites and expressly relies upon *Cannan* v. *Bryce*, and a statute of George 3, which goes much farther than our own case.

Now the case of *Cannan* v. *Bryce*, instead of being against the case at bar, makes a distinction that is decisive against the second proposition.

*J. E. Hanley*, for the defendant, cited : R. S., c. 125, §§ 2,. 10 ; *Franklin Co.* v. *Lewiston Sav. Bank*, 68 Me. 47 ; *Flagg* v. *Baldwin* (38 N. J. Eq. [11 Stew.] 219) ; 48 Am. Rep. 308 ; *Whitesides* v. *Hunt*, (97 Ind. 191) 49 Am. Rep. 441 ; *Cunningham* v. *National Bank, Augusta*, (71 Ga. 400) 51 Am. Rep. 266.

PETERS, C. J. The plaintiff claims to recover a sum of money loaned by him while the defendant was engaged in playing at cards. The ruling, at the trial, was that, if the plaintiff let the money with an express understanding, intention and purpose that it was to be used to gamble with, and it was so used, the debt so created cannot be recovered; but otherwise, if the plaintiff had merely knowledge that the money was to be so used. Upon authority and principle the ruling was correct.

Any different doctrine would in most instances, be impracticable and unjust. It does not follow that a lender has a guilty purpose merely because he knows or believes that the borrower has. There may be a visible line between the motives of the two. If it were not so men would have great responsibilities for the motives and acts of others. A person may loan money to his friend,— to the man, and not to his purpose. He may at the same time disapprove his purpose. He may not be willing to deny his friend, however much disapproving his acts.

In order to find the lender in fault, he must himself have an intention that the money shall be illegally used. There must be a combination of intention between lender and borrower— a union of purposes. The lender must in some manner be a confederate or participator in the borrower's act, be himself implicated in it. He must loan his money for the express purpose of promoting the illegal design of the borrower; not intend merely to serve or accommodate the man. In support of this view many cases might be adduced. A few prominent ones will suffice. *Green* v. *Collins*, 3 Cliff. 494; *Gaylord* v. *Soragen*, 32 Vt. 110; *Hill* v. *Spear*, 50 N. H. 252; *Peck* v. *Briggs*, 3 Denio, 107; *McIntyre* v. *Parks*, 3 Met. 207; *Banchor* v. *Mansel*, 47 Maine, 58. (See 68 Maine, p. 47.)

Nor was the branch of the ruling wrong, that plaintiff, even though a participator, could recover his money back, if it had not been actually used for illegal purposes. In minor offences, the *locus penitentiæ* continues until the money has been actually converted to the illegal use. The law encourages a repudiation of the illegal contract, even by a guilty participator, as long as it remains an executory contract or the illegal purpose has not

been put in operation. The lender can cease his own criminal design and reclaim his money. "The reason is," says Wharton "the plaintiff's claim is not to enforce, but to repudiate, an illegal contract." Whar. Con. § 354 and cases there cited. The object of the law is to protect the public — not the parties. "It best comports with public policy, to arrest the illegal transaction before it is consummated," says the court in *Stacy* v. *Foss*, 19 Maine, 335 ; see *White* v. *Bank*, 22 Pick. 181.

The rule allowing a recovery back does not apply where the lender knows that some infamous crime is to be committed with the means which he furnishes. It applies only where the minor offences are involved.

*Exceptions overruled.*

DANFORTH, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.