'[S. F. No. 555. Department Two.—June 26, 1897.]

## MAX WASSERMANN, Appellant, v. LOUIS SLOSS, Respondent.

Property Deposited for Illegal Purpose—Unexecuted Design.—One who deposits property with another, to be used in furtherance of an illegal design, is entitled to a return of the property, so long as such design remains unexecuted.

Nonsuit—Variance.—The question of a variance between the testimony of the plaintiff and that of one of his witnesses cannot be considered upon a motion for nonsuit.

Appeal from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

*Dorn & Dorn*, and *Theodore Savage*, for Appellant.

*Chickering, Thomas & Gregory,* and *Gerstle & Sloss*, for Respondent.

Garoutte, J.—By this action it is asked that a certain four hundred shares of stock of the Alaska Commercial

Company be declared to be held in trust by defendant for the benefit of plaintiff, and that an accounting be had of the earnings of said stock while so held. Defendant set up title to the stock in himself. Plaintiff offered evidence in support of his case, and, upon motion, was nonsuited. He moved for a new trial, which motion was denied, and thereupon appealed to this court from the judgment and order denying his motion.

The motion for the nonsuit was based upon five distinct and separate grounds, and it was granted by the trial court solely upon the fourth ground. In view of the law that, if any of the grounds upon which the motion was based justified the action of the trial court, then the order of said court will be affirmed upon appeal, appellant's counsel in their brief have reviewed and discussed these grounds *seriatim* in detail. In reply, respondent's counsel, for the purpose of sustaining the action of the trial court in granting the nonsuit, have limited themselves to the fourth and fifth grounds stated in the motion. For these reasons this court will likewise limit its consideration to those grounds, deeming respondent's present position a waiver of the remaining grounds insisted upon at the hearing of the motion before the lower court.

The trial court granted the nonsuit upon the fourth ground, namely, that the action was one which attempted to enforce a contract that was against sound morals and public policy. The pith of the action disclosed by the complaint as bearing upon this particular question of morals and public policy may be stated substantially in a few words. Defendant Sloss was president of the Alaska Commercial Company, a corporation engaged in the sealing industry in and about the territory of Alaska. It held certain leases from the government of the United States and also that of Russia. Plaintiff was a stockholder in this corporation. These leases were soon to expire; and a renewal of them was greatly desired by the corporation. Defendant, as president of the corporation, was actually engaged in the

effort to secure such renewals. He represented to plaintiff "that, in order to obtain such new leases, or any or either of them, it would be necessary for him, the defendant, to be in such a position as to enable him to interest certain persons high in authority and influence in the respective undertakings and with the respective governments aforesaid. That all of the members of said company should be willing to make some sacrifices to that end; that in order to place the defendant in a position to interest certain persons high in authority and influence in the said respective undertakings, and that to successfully negotiate the obtaining of the said new leases respectively, it would be indispensable for him, the said defendant, to have a certain amount of stock of the old company at his disposal, to be used by him in and about the procuring of the said new leases; and that said negotiations. could not be successfully conducted by the defendant unless he had the said shares of stock at his disposal, to be used in the manner hereinbefore stated. The said defendant then requested of the plaintiff that he, plaintiff, should transfer to the defendant four hundred shares of the capital stock of said company (out of the fourteen hundred shares so owned by plaintiff as aforesaid), and represented, promised and agreed to plaintiff that he, the defendant, would use the said shares of stock so placed at his disposal by plaintiff, as aforesaid, in the course of said negotiations looking toward the obtaining of the new leases respectively, and for the purpose of influencing certain persons high in authority and influence with reference to the government of the United States and that of Russia, respectively, whose good offices it would be necessary to obtain to that end." The plaintiff believed these statements of the defendant, and relying upon them transferred to him four hundred shares of said stock to be used for the purposes aforesaid. The complaint further alleges that this stock was thereupon converted by defendant to his own use. As tending to show a con-

tract against good morals and public policy, after a careful consideration of the evidence, we are prepared to say that it is weaker than the allegations of the complaint. And, if the objection here insisted upon as to the character of this evidence is good, then an objection could well have been taken to the complaint at the very inception of the litigation.

This case has been thoroughly argued, and a great portion of that argument has been addressed to the character of the contract entered into between these parties. But from the standpoint at which we view the litigation that question is immaterial. We are satisfied that the action is in no sense one to enforce a contract. Whatever relationship the transaction pictured by the aforesaid recitals of the complaint bears to the cause of action, it is a relationship disaffirmed and repudiated. The good or bad morals of this undertaking is immaterial, for the reason that the venture was in no sense executed, and until executed both parties are given an opportunity for repentance and rescission. Seeing the error of his ways, the law says a party may withdraw from the transaction; and it extends to him a helping hand by offering the inducement of giving back to him anything of value with which he has parted. Putting this case against plaintiff as bad as may be imagined, he transferred his stock to be used by defendant in corrupting servants of the respective governments. The transaction progressed no further. The stock was not so used. The precipice which would have been death to plaintiff's cause of action was never reached. No one was corrupted, and the stock was not stained. The parties' intentions as to the use to which this stock was to be put are not the controlling factor. It is not what was intended to be done with the stock that christens the transaction, but rather what was actually done. If defendant had disposed of the stock as contemplated, plaintiff would have had no remedy, for the evil would have been accomplished, the harm would have been done, and of necessity his plea for relief would not have been heard.

In this case plaintiff gave certain stock to defendant to be used for a certain purpose. He was plaintiff's bailee of the stock. The bailee did not use it for the purpose agreed upon, but took it to his own use. There is no principle of law to justify such a transaction. If plaintiff upon the second day subsequent to the transaction had changed his mind and notified defendant of such change, and demanded a return of his stock, upon principle and authority he would have been entitled to such return. The authorities all hold that, if he had done this any day prior to the time when the agreement was fully executed, he would have been entitled to a return of his stock. That this agreement was purely executory cannot be questioned. It could not be executed until the stock was applied to the purposes intended. If the question as to what company should obtain the leases here sought were still an open one, if it had not been settled at the commencement of this action, and if the stock had not been applied as contemplated, then, certainly, plaintiff could recover. The fact that these leases have been secured by other parties is wholly immaterial. That fact does not enter as an element in the question here discussed, and upon principle the case stands exactly as it did a moment after the stock was transferred to the defendant.

The authorities seem to be in direct accord with the views we have expressed. Our investigation has led us to the examination of many cases aside from those cited by counsel, and we find no case opposed to the doctrine of a right of recovery upon the part of a plaintiff where similar facts are presented. There are hundreds of cases found in the reports of this country and England where courts have refused to entertain actions based upon unlawful or void contracts. Our state reports contain many of them. At the present day it may be said that all courts agree upon that doctrine. In *Langton* v. *Hughes*, 1 Maule & S. 593, a case which is the landmark upon this question in English reports, it is held that a druggist is not entitled to recover for drugs sold

a brewer which he knew were to be used by the brewer in unlawful manufacture. The judge declared that by such sale the druggist aided and abetted the brewer in violating the law. A common and simple illustration is found where an action is brought to recover money loaned to another for the purpose and intention of playing a gambling game prohibited by law. (*McKinnell* v. *Robinson*, 3 Mees. & W. 434; *Tyler* v. *Carlisle*, 79 Me. 210; 1 Am. St. Rep. 301.)

The case at bar upon its facts does not bring it within the rule declared by the foregoing authorities. Those are all actions to recover money agreed to be paid upon illegal contracts. It was sought to enforce agreements made by contracting parties. Here Sloss was the agent or bailee of the plaintiff. He was given stock to be used by him for a certain purpose. The stock was still the property of the plaintiff, the title was still in him. Sloss, as long as he retained possession of it, as long as he did not apply it according to instructions, held it purely as the agent of the plaintiff. He could only apply it to the single purpose authorized. If he converted it to his own use it would be criminal embezzlement, and for a court to support his present position would not be in the interest of sound public policy, but, on the contrary, would be offering a premium upon the dishonesty of agents, servants, and bailees. It is said in *Norton* v. *Blinn*, 22 Am. Law Reg. 785: "In the second place it is contrary to public policy and good morals to permit employees, agents, or servants to seize or retain the property of their principal, although it may be employed in illegal business and under their control. No consideration of public policy can justify a lowering of the standard of moral honesty required of persons in these relations."

In this case, if the stock had been applied to the purposes intended, plaintiff would have no standing in court, for, in the language of many cases, the unlawful purpose would have been carried out; and this principle applies in all those cases where money or

property is given to another party to be used in an illegal transaction. Persons may not be punished either in civil or criminal courts for unlawful intentions. It is the consummation of these unlawful intentions that places a party without the law. If the unlawful intention or transaction is not carried out, if nothing is done under it, my servant has my property, and I am entitled to its return. As in the present case, he is acting under a special agency which I have a right to revoke at any time before performance, and, when so revoked, I am entitled to my own. It cannot be better public policy to deny me a recovery of the stock than to encourage my agent to commit a criminal offense.

Dunlap's Paley on Agency, star page 66, declares the general principle thus: "As long as money deposited with an agent for an illegal purpose remains unemployed, or if the purpose be countermanded by the principal before the application, it is a debt which may be recovered at law or in equity." Wood on Master and Servant, section 202, says: "While the courts will not enforce an illegal contract, yet if a servant or agent or another has, in the prosecution of an illegal enterprise for his master received money or other property belonging to the master, he is bound to turn it over to him, and cannot shield himself from liability therefor upon the ground of the illegality of the original transaction." In *Adams Exp. Co.* v. *Reno*, 48 Mo. 264, it was held that Reno, who had deposited a certain sum of money in the bank, which money was to be paid to a sheriff when he secured the pardon of Reno's brother, who was then in the penitentiary, could recover the money as his money as long as it remained in the possession of the bank *Taylor* v. *Lendey*, 5 East, 39, is a case where plaintiff gave a sum of money to the governor of the poorhouse to be used for the use of the poor, a. magistrate agreeing to stifle a threatened prosecution against him in consideration thereof. Plaintiff brought an action to recover the money so given to the governor. Lord Ellinborough said: "Take it that the money had been

paid by the plaintiff to the defendant for a chari-
table purpose, but before the defendant had made
any application of it the plaintiff countermanded
the payment. Was there not an end of the author-
ity, and could the agent persist in applying it
against the direction of his principal? The question,
therefore, is reduced to the case of a countermanded
agent." In *Peters* v. *Grim*, 149 Pa. St. 164, 34 Am. St.
Rep. 599, referring to an unlawful transaction in
stocks, the court said: "If when the first deposit was
made by plaintiff, with directions to buy the stock, he
had countermanded the directions before anything was
done under them, it could not be pretended that defend-
ant could have retained the money on the ground of il-
legality in the contemplated transaction. Intent as to
a future act does not make illegality." In *Morgan* v.
*Groff*, 4 Barb. 524, it is held: "That as long as money
deposited with an agent for an illegal purpose remains
unemployed, or if the purpose be countermanded by
the principal before its application, it is a debt which
may be recovered from the agent by the principal,
either at law or in equity." That was a case where
money was given to an agent to be bet upon an election,
which money the agent failed to bet but converted to
his own use. In *Bone* v. *Ekless*, 5 Hurl. & N. 924, the
owner of a ship authorized his agent to sell the same
for six thousand five hundred pounds to the Turkish
government, and to expend five hundred pounds of that
amount in bribing government officials to assist in mak-
ing the sale. The ship was sold and the agent paid out
three hundred pounds of the five hundred as contem-
plated. In an action the owner was held entitled to
recover the two hundred pounds, notwithstanding the
agent pleaded the facts showing the use to which the
money was to be applied--one of the judges saying:
"But the real nature of the case is that the plaintiff re-
ceived the whole of the money upon the sale of defend-
ant's ship, and claims to retain part of the money upon
the illegal arrangement, which, however, he has not

carried out.   He might have discharged himself by ac-
tual payment of the money, but he has not paid it; the
illegality would have been the payment for illegal pur-
poses.   Before that was done the defendant claimed the
money, and was entitled to recover it."   (See, also, *Tay-
lor* v. *Bowers*, L. R. 1 Q. B. Div. 291.)   In *Johnston* v.
*Russell*, 37 Cal. 670, the law is declared that either party
to a wagering contract upon the election may withdraw
from the transaction at any time before the event upon
which the result of the wager is dependent has hap-
pened, and under such circumstances the party with-
drawing may recover his money from the stakeholder.
From the legal principle declared by that case it neces-
sarily follows that the same party could have recovered
his money from an agent to whom he had given it to
be wagered.   When the money has passed into the
hands of the stakeholder the law has been violated.
When it is in the hands of the agent or servant to be
wagered no violation of the law has yet occurred.   It
follows that the doctrine of the above case goes to
lengths beyond anything demanded by the facts of the
case at bar.   It will thus be seen from the array of
cases cited that authority is not lacking to support
plaintiff's right of recovery.   There are cases contain-
ing incidental statements that may look the other way;
but the facts there are not the facts of this case.   In
those cases it will be found that the plaintiff relied upon
an illegal contract for a recovery, and the statements
made were not necessary to the decision of the case, and
not called for by the facts before the court.

The court is asked to sustain the order granting the
motion for a nonsuit upon the fifth ground stated.   It
is claimed by respondent's counsel that a serious "vari-
ance" exists between the evidence of plaintiff and his
principal witness, Seligman.   Conceding such a vari-
ance to exist, any question arising from it cannot be
raised upon a motion for nonsuit.   It is but fair to re-
spondent Sloss to say that by his answer he in no way
relies upon the illegality of any contract entered into

between himself and Wassermann for the purpose of defeating Wassermann's cause of action. He claims that he purchased the stock from Wassermann and relies upon his title under such purchase.

Judgment and order reversed and cause remanded for a new trial.

HARRISON, J., and VAN FLEET, J., concurred.