JAMES MUNNS v. DONOVAN COMMISSION COMPANY, Appellant.

Gambling on Board of Trade: AGENCY: *Particeps criminis.* One who managed what he termed a "board of trade," where he received money from plaintiff on representations that de- fendant, a firm of brokers, whose correspondent he was, would purchase options on the Chicago Board of Trade, a commission being taken and shared by him and defendant, and he not pre- tending to bargain either with plaintiff or defendant, was not an agent of either party, but particeps criminis in the gam- bling enterprise.

REVOCATION OF GAMING CONTRACT: *Recovery of money paid.* Where plaintiff deposited money with defendant to make purchases on the board of trade with the understanding that the differ- ence between the contract and the market price be settled in money, without delivery of the commodities, but no purchases were made, he could revoke defendant's authority to enter the illegal contract, and recover back the money.

SAME: *Failure of minds to meet on contract.* If plaintiff mis- takenly supposed that such purchases would be made, but de- fendant intended it as a wager, then the minds of the parties never met; and plaintiff, on discovering the mistake before defendant had done more than enter the transaction on its books, might recover.

Attachment Petition: AMENDMENT. A petition on which attach- ment was sued out alleged an oral contract by defendant to pay the money. An amendment stated the transaction by which defendant came into possession of the money, and showed a cause of action on an implied promise to repay money had and received, relating to the same indebtedness, and on this recov- ery was had. *Held,* that money attached was rightfully ap- plied to the judgment.

JUDGMENT AND ATTACHMENT LEVY: *Excessive recovery.* In an action for money had and received, aided by attachment, the

fact that not all of the money attached was the identical money deposited by the plaintiff, did not make a verdict therefor excessive, as, defendant having appeared and joined issue on the averments of the petition, the court acquired jurisdiction, and might render judgment for the amount found due, regardless of the extent of the levy.

*Appeal from Adams District Court.*—HON. H. M. TOWNER, Judge.

SATURDAY, OCTOBER 11, 1902.

ACTION for money had and received. After the evidence had been introduced, the court directed a verdict for the amount in the hands of the garnishee belonging to defendant, who was a nonresident. From judgment on this verdict, it appeals.—*Affirmed.*

*Burg Brown, Dale & Allen* and *Chester H. Krum* for appellant.

*Davis & Wells* for appellee.

LADD, C. J.—Burchard opened what he was pleased to denominate a "board of trade" in the back room of an upper story in the town of Corning. The furniture consisted of a blackboard, chalk, and suitable seats for his customers, among whom were the plaintiff and G. W. Cruzen. His connection with the defendant was simply that of correspondent to whom it furnished the market reports of produce on the Chicago Board of Trade, directly from Chicago, every 15 minutes during certain hours of the day. These were immediately transferred to the blackboard, and when some one offered to buy or sell any commodity for future delivery during a named month, Burchard reported the proposition to defendant at St. Louis, by whom it was accepted or rejected; and, if accepted, a small margin—as, in case of wheat, one cent a bushel—was paid to Burchard, who deposited it to

defendant's credit in the Corning Savings Bank. Thereupon the customer was given a card, showing a corresponding number, the commodity, quantity, price, and month of delivery. A purchaser, if the price fell, or a seller, if it raised, was required to advance additional margins, which were deposited in the same way. Upon failure to do so the trade was closed out as soon as the margins paid were exhausted by fall or rise of the market price. The defendant drew the money from the bank at will. Burchard was allowed three-fourths and the defendant took one-fourth of the commissions exacted. In event the market continued in favor of the customer till the end of the month, the margin paid, less commissions, together with profits, were remitted by defendant from St. Louis, as was also Burchard's share of commissions. This avoided disclosing the exact state of account in the bank. Burchard had operated about three months, when, on the 17th of July, 1900, he was advised that the telegraph company would discontinue transmitting market reports, and on the following day this action was begun; Cruzen having assigned his claim to plaintiff. At that time the plaintiff had paid to Burchard, to be used in the purchase of commodities on the Chicago Board of Trade in September options, $1,853, and Cruzen $3,084. These payments were made on Burchard's representation that defendant was a member of said board of trade, and would there purchase said options. But for such representations and their reliance thereon, the money would not have been paid. Purchases were not in fact made on the board of trade. The above statement of facts is undisputed. The defendant pleaded, and now insists, that the alleged purchases were gambling contracts. This may be conceded. *Peoples Sav. Bank v. Gifford*, 108 Iowa, 279; *Gregory v. Wattowa*, 58 Iowa, 713; *Counselman v. Reichart*, 103 Iowa, 430. But those contemplated by Munns and Cruzan were never carried out. They turned the money over to

Burchard for a specific purpose; i. e., to buy options on the Chicago Board of Trade. The latter had represented that defendant was a member of that body, and that it would make such purchases. Burchard did not pretend to bargain with plaintiff or defendant. He was a mere go-between, a medium through whom the parties communicated. As he was engaged in promoting a gambling enterprise, he cannot be said to have been merely the agent of either party, but was *particeps criminis*. *Pearce v. Foote*, 113 Ill. 228 (55 Am. Rep. 414); *Fortenbury v. State*, 47 Ark. 188 (1 S. W. Rep. 58); *Nolan v. Clark*, 91 Me. 38 (39 Atl. Rep. 344); *Mexican Intr. Banking Co. v. Lichtenstein*, 10 Utah, 338 (37 Pac. Rep. 574); *Irwin v. Williar*, 110 U. S. 499 (4 Sup. Ct. Rep. 160, 28 L. Ed. 225); 14 Am. & Eng. Enc. Law., 636. Was anything bought of defendant? If so, neither Cruzen nor plaintiff were apprised of the fact. The defendant did not claim to keep any of the commodities for sale. It made quotations of the Chicago Board of Trade prices, not its own, to be put upon the blackboard. It exacted a commission on every purchase or sale. If undertaking to buy or sell for itself, would it have been likely to have exacted a commission? Its very name indicated the character of business intended. These matters were well calculated to confirm the belief of the customers that they were dealing with the defendant as a broker, and not as a principal. There was nothing to inform them that they were merely betting with the Donovan Commission Company on the rise or fall in the price of produce, and allowing it to hold the stake put up on one side only. If defendant was to make purchases on the board of trade of commodities with the intention that the difference between the contract and the market prices be settled in money, and that there should be no actual delivery of the property, the plaintiff and Cruzan had the right to repent of their wrong doing, and revoke the authority given, at any

time before the purchases were actually made. Having discovered the error of their ways, the law not only permitted them to withdraw from the transaction, but extended to them a helping hand by offering the inducement of giving back to them that with which they had parted. *Wassermann v. Sloss*, 117 Cal. 425 (49 Pac. Rep. 566, 59 Am. St. Rep. 209, 38 L. R. A. 176); *Bernard v. Taylor*, 23 Or. 416 (31 Pac. Rep. 968, 37 Am. St. Rep. 693, 18 L. R. A. 859); *Tyler v. Carlisle*, 79 Me. 210 (9 Atl. Rep. 356, 1 Am. St. Rep. 301.) See *Shannon v. Baumer*, 10 Iowa, 210; *Adkins v. Flemming*, 29 Iowa, 122. The principle on which recovery is allowed in such cases was lucidly stated in *Clarke v. Brown*, 77 Ga. 606 (4 Am. St. Rep. 98): "This is not a suit upon a wagering contract. It is a suit for money in the hands of agents by the principal, furnished them to buy and sell grain for him; and it is alleged that this money now sued for is the money so furnished. There is nothing illegal in the contract set up in the declaration. It is the defense that sets up the illegal contract. All that the plaintiff has to prove in order to recover is that these agents have his money that he furnished them, and refuse to turn over his own to him. Thereupon the agents say, 'It is true we have your money, but you furnished us it to speculate in futures for you, and you cannot recover it back, because you furnished it for an illegal purpose.' The agents cannot set up this illegal contract, because they made it, and got a consideration for using the money illegally, and are *particeps criminis*. Just as if it had been necessary for the plaintiff, the principal, to use the illegal contract to recover the money,—which would have been necessary had he sued for the profits of the venture,—so it is illegal for the agents to use it to defend the suit for money they have belonging to the principal." If, however, the money was turned over to defendant on the mistaken supposition that such purchases would be made, but defendant really intended to treat the

money as placed in its hands as a wager on the future price
of commodities, then the minds of the parties never met,
and upon the discovery of the mistake before defendant
had done more than enter the transaction on its books the
plaintiff might refuse to proceed further, and insist upon
the return of his money. The evidence established con-
clusively the one situation or the other. And we need not
determine whether a party to a wager may also act as
stakeholder; but, if it be conceded that he may, there i
no apparent reason why his liability for the return of the
amount put up by his adversary before loss should be differ-
ent than that of a third party acting as stakeholder.

II. The petition upon which the writ of attachment
was sued out alleged an oral contract to pay the money.
Thereafter an amendment was filed, stating somewhat in
detail the transaction, and containing allegations of fraud.
It was unverified, but prayed for an order that the
money in the hands of the garnishee be applied on
the judgment to be recovered. This amendment,
eliminating the allegations of fraud, which were not pro-
ven, stated a cause of action based on an implied promise
to repay money had and received, and upon this recovery
was had. It merely set up a cause of action in different
form for the same indebtedness to secure which, however
evidenced, the writ was sued out. Under these circum-
stances we think the order for the application of the money
attached on the judgment rightly entered. *Cawker City
State Bank v. Jennings*, 89 Iowa, 230.

III. Appellant suggests that all the money paid into
the bank and attached by garnishment was not the identi-
cal money turned over by plaintiff and Cruzen, and for
this reason the verdict directed was excessive. This could
make no difference, as the defendant appeared in
court, and joined issue on the averments of plain-
tiff's petition as amended. The court therefore ac-
quired jurisdiction of the parties as well as the subject-

matter, and might render judgment for the amount found
due regardless of the extent of the levy.—AFFIRMED.