MAUD STOVER, Appellee, v. MRS. J. FLOWER, Appellant.

Landlord and Tenant: AGENCY: UNAUTHORIZED LEASE: PAYMENT OF RENT. An agent in the absence of express authority cannot make a valid lease of his principal's property to be used for an immoral purpose, and a payment of rent to the agent under an unauthorized lease will not bind the principal.

Repayment of Rent: LIABILITY OF LANDLORD. The promise of an agent to repay money advanced to him on an unauthorized contract of lease cannot be enforced against the principal in the absence of a showing that the principal had received some benefit therefrom.

Repayment of Rent: LIABILITY OF LANDLORD: PRESUMPTION. Where one enters into a conspiracy with an agent to lease property of the principal, in the name of another and for an immoral purpose, there is no presumption that the agent was unauthorized to receive rent therefor, and money paid the agent under such circumstances cannot be recovered from the principal. •

Illegal Contract: RECISSION: REPAYMENT. When an agent without authority leases property for an immoral purpose and receives part of the rent, it cannot be recovered from the principal on disaffirmance of the contract.

New Trial. While the granting of a motion for a new trial is largely discretionary with the trial court, yet where a case has been properly determined on its merits, a new trial should not be allowed, and will be reversed on appeal.

*Appeal from Marshall District Court.*—HON. OBED CASWELL, Judge.

WEDNESDAY, MAY 20, 1903.

APPEAL from an order sustaining plaintiff's motion for a new trial in an action wherein she sought to recover damages for defendant's failure to observe a contract of lease of certain rooms in a building in the city of Mar-

shalltown, and to recover the sum of $120 paid to defend-
ant's agent. The issues and facts will appear in the
opinion.—*Reversed.*

*Theoderick F. Bradford* for appellant.

*Robert Shirk* and *J. M. Whitaker* for appellee.

Deemer, J.—Plaintiff claims that she leased certain
rooms in a building in the city of Marshalltown, for the
term of one year, from William Flower, the husband and
agent of the defendant, at the agreed rental of $30 per
month; that she paid to said agent the sum of $120 upon
the rent; that defendant refused to allow plaintiff to enter
the premises, but canceled the lease, and refused, and still
refuses, to return the $120, although demand has been
made therefor; and she asked judgment for damages in
the sum of $120, with interest. In an amendment to her
petition, filed during the trial, she averred that defendant
refused to ratify the contract made by her agent, but
disapproved the same, and refused to allow plaintiff to
take possession; that defendant's agent thereupon prom-
ised to return the money received by him; that she (plain-
tiff) thereupon rescinded the contract, and accepted the
promise to return the money, but that neither defendant
nor her agent made return of the funds so received, al-
though often demanded; and that, as defendant has
received the $120, which she refuses to return, plaintiff is
entitled to judgment for that amount. Defendant pleaded
in answer that, while William Flower was her agent, he
had no authority to lease the property for illegal purposes;
that in fact the property was rented to plaintiff for the pur-
pose of maintaining therein a house of ill fame. She also
pleaded a general denial of the allegations of the original
petition. To the amended petition defendant pleaded
a general denial, and also specifically denied that there was
any agreement to abandon the lease and refund the
money; pleaded there was no consideration for the alleged

abandonment, that the original contract was void, and the abandonment and surrender thereof was not a good consideration for the alleged agreement to refund.

There is no dispute over the fact that William Flower received $120 for rent of the rooms, that he received it ostensibly as the agent for the defendant, and that this money has not been refunded to any one. There was evidence tending to show that this money was received from plaintiff through one Hanson for the use of the rooms, and there is no doubt that plaintiff was renting them for the purposes of prostitution. There was also evidence to the effect that the rooms were rented directly to Hanson, and that Hanson paid the rental therefor. If the rooms were rented to Hanson, then, of course, plaintiff cannot recover. If they were rented to plaintiff, it was for an illegal purpose, and she cannot recover, save on one theory, to which we shall hereinafter refer. It also appears from the evidence that, if the rooms were rented to plaintiff, it was against the express protest of the defendant, and that Hanson's name was used for the purpose of concealing the true facts from her. There is no question that both plaintiff and William Flower understood that defendant would not consent to the leasing of the rooms to the plaintiff, and that the matter was kept conceale l from defendant until after the money was paid and the lease executed. When the defendant learned of the matter, she wrote to plaintiff, expressly repudiating the lease, and plaintiff made no further effort to get possession. Their was also some evidence that William Flower promised to return the money received by him. Defendant's evidence also tended to show that the property was not leased to plaintiff, but to Hanson, and that Hanson was never denied the use and possession of the rooms. There is also, some evidence which tended to show that plaintiff surrendered her lease and rescinded the transaction.

On these issues and this evidence the case was submitted to a jury, the court instructing, in effect, that, if the plaintiff leased the property for a lawful purpose, and paid part of the rent, and that defendant, after receiving the rent, refused to permit plaintiff to take possession, then plaintiff was entitled to recover; that, if the property was rented to Hanson, and plaintiff undertook to take possession thereof, under the lease, for immoral purposes, then she could not recover; and that, if the contract of lease was for an immoral purpose, plaintiff could not recover. The jury was also instructed as follows: "(7) If you find the fact to be that before the consummation of the leasing of the premises in question, and after the plaintiff had paid defendant or her agent $120 rent upon a lease to be completed, and you further find that before said contract and lease were completed the negotiations were broken off by defendant refusing to complete the same, and the same was then broken off and the same annulled, and it was then agreed between plaintiff and defendant, through her husband and agent that the said $120 should be refunded and repaid the plaintiff, and you further find that the defendant has not done so, then your verdict should be for plaintiff, and the sum of $120 and interest thereon at six per cent. from the payment of the same." There was evidence on which to base this last instruction, and, as we shall see, it was more favorable to plaintiff than she was entitled to. The verdict was for defendant. Plaintiff filed a motion for a new trial, and this motion was sustained, and the appeal is from this ruling.

The motion was based on misconduct of certain jurors, incompetency of some of the jurors to sit in the case, newly discovered evidence, error in rulings on evidence, in the instructions given and refused, and insufficiency of the evidence to support the verdict. There is no showing of misconduct of jurors, or of their incompetency to serve, and there is no affidavit from the parties who it is claimed

would give evidence which it is said was newly discovered. Hence these matters cannot be considered. The instructions fully stated the issues, and, generally speaking, were as favorable to the plaintiff as she could ask. There was a conflict in the evidence as to some of the matters in issue, as we have already pointed out. Plaintiff testified that she knew defendant did not want her husband to rent the rooms to her, but that the husband promised to keep it quiet until he and defendant had gone on a trip South, which they were then proposing to take, when he would break the news to her. The lease was made in the name of Henry Hanson for the evident purpose of deceiving the defendant. After the defendant and her husband went South, defendant wrote plaintiff that she did not want her to occupy the rooms, and that, if she, plaintiff, moved in, she, defendant, would make her all kinds of trouble. To this plaintiff said she responded by writing that she certainly would not move in after receiving her letter. Plaintiff then testified that William Flower, the agent, told her that she should not be uneasy; that, if she, plaintiff, could not occupy the rooms, he would refund the money.

Much of the evidence was incompetent, because secondary, but we set it out to demonstrate the character of plaintiff's claim. Without setting forth more of the testimony, it is enough to say that plaintiff 1. AGENCY: unauthorized lease: payment of rent. knew the defendant would not approve of a lease made to her, and that, according to her version, she conspired with William Flower, the agent, to secure a lease which should conceal from defendant the fact that she, plaintiff, was to occupy the premises. The jury was fully justified in believing that plaintiff was leasing the property for an immoral purpose. If this were true, of course the agent was presumtively without authority to make such a contract, and a payment made to an agent under such circumstances would not be binding on his principal. Under neither theory could plaintiff re-

cover the money paid the agent from the defendant. If she conspired with the agent to secure the rooms against the protest and wishes of the defendant, the payment made to the agent could not constitute the basis of a recovery from the principal. And so, if the payment was made to the agent for a lease in violation of law, and the agent had no express authority to make such a contract, the payment to the agent could not be made the basis of a recovery from his principal, in the absence of a showing that the principal in fact received some benefit from the payment. Even here, if the contract was for an illegal purpose, the law will leave the parties where it finds them. There is one exception to the rule, to which we shall hereinafter refer.

The seventh instruction which we have quoted refers to the promise to repay, and was more favorable to the plaintiff than she was entitled to. Accepting this as the law, there was a decided conflict in the evidence relating thereto, which a jury alone could settle. The jury settled this conflict, and plaintiff should be content, especially in view of the fact that under her own version of the affair she was not entitled to recover from the defendant. There is no evidence that defendant herself ever had any benefit from the money, or that she ever promised to repay the same. The only promise testified to is one said to have been made by William Flower, wherein he stated that he had the money in his safe, and would return it. This promise would not be binding on defendant without some showing that he was authorized to make it for her. There is no testimony of any such authorization.

2. REPAYMENT of rent: liability of landlord.

From the facts above recited it is clear that there is no presumption on which plaintiff may rely. If plaintiff and the agent entered into a conspiracy whereby plaintiff was to receive the rooms under another name for the purpose of deceiving the

3. REPAYMENT of rent: liability of landlord: presumption.

defendant, and against her express protest, it is manifest that a payment of money made to her husband under such circumstances could not, in any sense, be said to have been made to the defendant. And so, if the money was paid to an agent for a lease for an unlawful purpose, there is no presumption that the agent was authorized to receive the money for and on behalf of his principal. Hence a payment made to him under such circumstances would not be binding on his principal. It is clear, then, that defendant never personally had any benefit from the money received by the agent, and that his promise to refund, even if made, would not be binding on defendant. He alone, if any one, would be responsible under such circumstances. Moreover, if the money was paid to him for a lease for an immoral purpose, plaintiff could not recover without showing a voluntary rescission of the contract—a *locus pœnitentiæ*, as it is sometimes called. The general rule is that in cases of illegal contract the party performing his part cannot recover on the grounds of an implied promise on the part of the party receiving the benefit therefrom to pay therefor, as the law will imply no promise to pay for benefits received under an illegal contract on account of performance thereof by the other party. *Steever v. R. R.*, 62 Iowa, 371; *Gleason v. R. R.*, (Iowa) 43 N. W. Rep. 517; *Peck v. Burr*, 10 N. Y. 294; *Kinney v. McDermott*, 55 Iowa, 674. But it is quite generally held that, so long as an illegal contract remains executory, and the illegal purpose has not been put in operation, the one who has paid money thereon to the other party may repudiate the contract and recover back the money. This has been spoken of as the right of repentance. *Congress Co. v. Knowlton*, 103 U. S. 49 (26 L. Ed. 347); *Wasserman v. Sloss*, 117 Cal. 425 (49 Pac. Rep. 566, 38 L. R. A. 176, 59 Am. St. Rep. 209); *White v. Franklin Bank*, 22 Pick. 181; *Tyler v. Carlisle*, 79 Me. 210 (9 Atl. Rep. 356, 1 Am. St. Rep. 301); *Lafferty v. Jelley*, 22

4. ILLEGAL contract: rescission: repayment.

Ind. 471; *Souhegan Bank v. Wallace*, 61 N. H. 24; *Hooker v. De Palos*, 28 Ohio St. 251; *Dauville v. Mirrick*, 25 Wis. 688. We have recognized this doctrine, to some extent at least, in *Munns v. Donoran*, 117 Iowa, 516; *Williamson v. C. R. I. & P. R. R.*, 53 Iowa, 126; *Sayre v. Wheeler*, 31 Iowa, 112. Doubtless a like rule obtains when the illegal contract has been mutually abandoned, and a new promise is made to return benefits received. *Stout v. Ennis*, 28 Kan. 706. There is a conflict of authority on this proposition, and we do not care to pronounce definitely thereon at present. Should we apply any of these exceptions to the case made by plaintiff, it is manifest there can be no recovery from defendant, for the plain reason that she never received the money, and never promised to return it. The money was received by her husband, without her authority, and against her expressed wish. She never had any benefit therefrom, and her husband had no authority to rescind the alleged contract, and to bind defendant by a promise to return the money received thereon to the plaintiff. If there was any right of action, it was against the husband, who received the money, and plaintiff could not, on any theory, recover it from defendant.

While the matter of sustaining a motion for a new trial rests largely in the discretion of the trial court yet this discretion is a legal one, and, where improperly exercised, will be reviewed, and the ruling reversed by this court. Where justice has been done, and the case properly decided on the merits, a new trial should not be granted. The plaintiff, on her own showing, was not entitled to recover from the defendant. She may have been entitled to a judgment against William Flower, and the only reason she did not pursue her remedy against him seems to be that he is insolvent. That is her misfortune, and one of the penalties she must pay for entering into this kind of a transaction. The verdict was

5. NEW TRIAL.

clearly right, and the motion for a new trial should have been overruled. The ruling must, therefore, be reversed, and the case remanded for judgment on the verdict. — REVERSED.