SAMUEL S. GREENBERG *vs.* THE EVENING POST ASSO-
CIATION.

First Judicial District, Hartford, January Term, 1917.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In an action to recover money paid without consideration to the defendant through the hands of its alleged agent, the question of agency becomes of no importance if it appears upon the trial that the defendant actually received the money.
The evidence in the present case reviewed and *held* sufficient to warrant

the jury in finding that the money in question had in fact been turned over to the defendant by its alleged agent.

One who enters into a so-called prize contest inaugurated to increase the circulation of a newspaper, with knowledge that the scheme as proposed to be carried on by its manager would obviously be a gross fraud upon the other competitors, stands *in pari delicto* with the manager, and cannot recover money paid to him in aid of such an undertaking, in an action brought upon the corrupt bargain. He may, however, repudiate the bargain, if he acts promptly and before the contest is closed and the rights of other competitors are impaired, and in such case is entitled to recover the money, as paid and retained without consideration; nor is any distinction to be observed, respecting the right of recovery, between cases in which the purpose of the bargain is merely illegal and those in which it involves moral turpitude. In either case the recovery is allowed, not out of tenderness for the plaintiff, but upon the ground of sound public policy.

A right of recovery, in such a case, is not affected by the nature or character of the representations which were made to the plaintiff to induce him to part with his money; for the action is not for money obtained by fraud, but to recover back money received without consideration.

Argued January 4th—decided February 21st, 1917.

ACTION to recover money paid to the defendant which was alleged to have been obtained by its agent while conducting a prize contest in its behalf, brought to the Court of Common Pleas in Hartford County and tried to the jury before *Smith, J.;* verdict and judgment for the plaintiff for $350, and appeal by the defendant. *No error.*

There was evidence at the trial from which the jury might reasonably have found the following facts, among others: The defendant was engaged in publishing a daily newspaper commonly known as The Hartford Post, and to increase its circulation employed one Fitch, a nonresident, to conduct a so-called prize contest under which prizes were to be given to those who obtained the most votes. Fitch's contract with the defendant gave him complete charge and conduct of the contest, and according to its advertised terms,

coupon votes were to be acquired by cutting out and turning in certain coupons printed in each issue of the paper; and subscription votes, which were of higher value, were to be allowed "on paid in advance subscriptions to the daily and Sunday Post." The contest was advertised as a "strictly competitive proposition," and every contestant was promised a "square deal." The plaintiff, after entering the contest, was informed by Fitch that a certain Jackson automobile of the alleged value of $2,500, which was offered as one of the prizes, could be won only by a person who was willing to put money into the contest, and that if the plaintiff would pay $300 he would win the automobile. Plaintiff paid the money and about two weeks later Fitch demanded another $100, whereupon the plaintiff sought legal advice and was informed that he had become a party to a fraudulent scheme, and that he should repudiate the whole transaction and demand back his money. Before the contest was closed or prizes awarded, plaintiff repudiated the bargain and demanded back his money from Fitch, and, both orally and by letter, from the president of the defendant company. Plaintiff sued Fitch, who left the State after service was made upon him, and after a nonsuit had been entered in that action the plaintiff sued the defendant.

*William J. Hamersley,* with whom was *Birdsey E. Case,* for the appellant (defendant).

*John J. Dwyer,* for the appellee (plaintiff).

BEACH, J. This action was brought to recover back money paid to Fitch as the agent of the defendant, and defendant appeals from a refusal to set aside a plaintiff's verdict, and for alleged errors in the charge. The material questions are whether Fitch was the agent of the defendant for the purpose of receiving the money, and,

if so, whether the plaintiff has any enforceable cause of action to recover back the money from Fitch.

As to the first question, we think the jury might reasonably have found that the defendant actually received the $300 paid by the plaintiff to Fitch, less Fitch's commission of twenty per cent; although it seems that the money was not received by the defendant in a lump sum, or with knowledge that it came from the plaintiff. The record shows that the defendant did not unqualifiedly deny the receipt of the plaintiff's money, but claimed in the alternative that it either did not receive it, or, if received, gave value for it. The defendant's treasurer, testifying subject to correction from the books, expressed the belief that if Fitch received any money from the plaintiff, he had accounted for it. The books and other papers did not definitely prove or disprove the receipt of the plaintiff's money by the defendant; but, when taken in connection with certain testimony of some of the other competitors, tended to prove that Fitch had received other lump sums of money in violation of the advertised terms of the contract, and had accounted for them to the defendant as paid-up subscriptions by turning in fictitious names of pretended subscribers. The alternative theory, apparently suggested by Fitch—that all persons named in the lists of so-called credit subscriptions amounting to nearly $3,000, had refused to receive the paper after they had paid for it—must have appeared to the jury to be highly improbable. From this conduct of Fitch in accounting for other lump sums received from other competitors under like circumstances, it was not unreasonable, in the absence of satisfactory evidence to the contrary and in view of the testimony of defendant's treasurer, for the jury to infer that Fitch had probably accounted to the defendant for the plaintiff's money also.

The jury may have so found, and that being so, it is
of little consequence to inquire into the actual or ap-
parent scope of Fitch's agency, or to discuss the ques-
tion of intentional ratification; for if the defendant,
however innocently, has actually received the plain-
tiff's money, without any new consideration moving
toward the plaintiff, the defendant is evidently under
the same liability to account for it as Fitch himself
would have been.

It is quite clear that the jury might have found that
the plaintiff never received any value for his money,
and so the only remaining question on the appeal from
the refusal to set aside the verdict is whether the trans-
action between the plaintiff and Fitch gave rise to any
enforceable right on the plaintiff's part to recover back
the money from Fitch.   No doubt the proposed trans-
action, as the plaintiff testifies to it, would, if carried
out, have been a gross fraud upon the other competi-
tors; and this is so evident that the plaintiff was bound
to know it and cannot succeed in his attempt to pose
as an inexperienced person innocently led into taking
part in a fraudulent scheme.   At the time when he
paid the money, he was *in pari delicto* with Fitch,
and if this action were brought on the original corrupt
bargain, he could not prevail.  *Ex turpi causa non oritur
actio.*

But the plaintiff is not suing Fitch, or the defendant,
to compel performance of the bargain, or to recover
damages for the breach of it.  His action is founded not
on the bargain but on his repudiation of it, before the
contest was closed, or the prizes awarded, or the rights
of other competitors impaired.  The question is whether
it is not quite as consistent with sound public policy
to encourage the prompt repudiation of illegal and im-
moral contracts by permitting, under such circum-
stances, the recovery of money paid upon an illegal

or immoral consideration, as to declare the money forfeited the moment it is paid, and thus discourage repentance in such cases.

The defendant practically concedes that the weight of authority authorizes the recovery of money paid for a purpose which is merely illegal, in case the bargain is repudiated promptly and before it is performed by the other party; but it insists that the rule is otherwise where the money is paid under an arrangement involving moral turpitude. We fail to see the propriety of such a distinction. In either case the recovery is not allowed out of tenderness for the plaintiff, but, in some cases, on the ground that the maxim *ex turpi causa non oritur actio* does not apply, because the action is not brought on the corrupt bargain; in other cases on the same ground, supplemented by the consideration that the law ought to favor the prompt repudiation of corrupt bargains. In all these cases the reasoning of the decisions would apply regardless of the degree of corruption involved in the original arrangement.

It is true that in some cases when the original transaction involved only *malum prohibitum*, it has been suggested that no recovery would have been allowed had the original transaction involved moral turpitude. Thus in *Congress & Empire Spring Co.* v. *Knowlton*, 103 U. S. 49, it is said, in the head-note, that a party to a contract, the making of which, "although prohibited by law, is not *malum in se*," may, while it remains executory, rescind and recover back money advanced thereon to the other party who had not performed any part of the contract. In the body of the opinion it is pointed out that the making of the contract in question was *malum prohibitum* and not *malum in se*, but the suggestion in the head-note that no recovery would have been allowed had the contract involved actual fraud is not to be found in the opinion itself. But in *Tyler* v.

*Carlyle,* 79 Me. 210, 9 Atl. 356, the court, in permitting the recovery of money paid for an alleged purpose which was never carried out, does say that the doctrine applies only to minor offenses and not to infamous crimes. On the other hand, recoveries have been permitted in several cases where the repudiated transaction contemplated the performance of an actual fraud. In *Taylor* v. *Bowers,* L. R., 1 Q. B. D. 291, quoted with approval in *Congress & Empire Spring Co.* v. *Knowlton,* 103 U. S. 49, and in *Bowes* v. *Foster,* 2 Hurl. & Nor. 779, the plaintiffs were allowed to recover back property which had been conveyed away with the design of defrauding creditors. In *Falkenberg* v. *Allen,* 18 Okl. 210, 90 Pac. 415, and in other cases, money wagered on a foot race, the result of which was believed by the plaintiffs to have been agreed on in advance, was allowed to be recovered. *Wassermann* v. *Sloss,* 117 Cal. 425, 49 Pac. 566, was a case of shares of stock deposited for the purpose of corruptly influencing public officials to favor the execution of a government lease; and Swift illustrates the rule by citing a case in which money paid to procure a place in the customs was allowed to be recovered because the contract remained executory. 1 Swift's Dig. 219.

We think the court correctly charged the jury that in an action to recover back money paid for the purpose of carrying out a proposed illegal or immoral design, the plaintiff might recover upon proof that he seasonably repented of his bargain, and evidenced such repentance by repudiating the arrangement with reasonable promptness and before the other party had so far acted in performance of it as to carry any part of the illegal or immoral design into effect.

The other assignments of error, for refusing to charge that the plaintiff could not recover in this action unless the representations on which he relied were representa-

tions of fact, and of such a character that a reasonably prudent man would rely on them, are not well taken. The plaintiff having seasonably and rightfully rescinded, is equitably entitled to recover back his money. The action is not to recover money obtained by fraud, but to recover back money received and retained without consideration.

There is no error.

In this opinion the other judges concurred, except WHEELER, J., who dissented.