## MEXICAN INTERNATIONAL BANKING COMPANY, A CORPORATION, RESPONDENT, *v.* HENRY LICHTENSTEIN, APPELLANT.[1]

LOTTERIES.—SALE OF LOTTERY TICKETS.—JOINT CRIMINAL ENTERPRISE.—PARI DELICTO.—PRINCIPAL AND AGENT.—The plaintiff, a lottery company, with headquarters in Old Mexico, sent lottery tickets to defendant in San Francisco to be sold and accounted for under a contract as its agent. Defendant sold the tickets but refused to pay over all the money, and plaintiff sued him for money had and received. 4 Deering's Anno. Code (Cal.), § 321, provides that "every person who sells, gives, or in any manner whatever furnishes or transfers to or for any other person any ticket, chance, share or interest, or any paper, certificate or instrument purporting or understood to be or to represent any ticket, chance, share or interest in or depending upon the event of any lottery, is guilty of a misdemeanor." *Held, First,* that the transaction is criminal in California, where it was effectuated, and also in Utah where the civil courts are asked to divide the proceeds of the crime. *Second,* that both parties being in *pari delicto,* the

---

[1] Rehearing denied August 31, 1894.

court will leave them in the same condition in which it finds them. *Third*, that the money in the hands of the defendant was obtained by means. of a criminal enterprise and belongs to neither plaintiff nor defendant. *Fourth*, that both parties being engaged in a criminal enterprise, both are principals under the laws of Utah, and that the relation of principal and agent does not exist.

(No. 480.  Decided July 27, 1894.  37 P. R. 575.)

APPEAL from the District Court of the Third Judicial District, Hon. S. A. Merritt, *Judge.*

Action by the Mexican International Banking Company, a corporation existing under the laws of the Republic of Old Mexico against Henry Lichtenstein for money had and received, being a balance in defendant's hands of the proceeds of the sales of lottery tickets. The case was originally tried before Hon. C. S. Zane, Judge, who instructed the jury to find a verdict for defendant. Hon. S. A. Merritt having succeeded Hon. C. S. Zane, granted plaintiff a new trial, from which defendant appeals. *Reversed.*

*Mr. Frank Pierce,* for appellant.

Only one question is raised by this appeal. Could the plaintiff recover of defendant the money collected from the sale of lottery tickets even though he was agent of the plaintiff? The transaction was criminal under the laws of California. 4 Deering Penal Code, § 321. *Lex loci contractus* controls. It is unlawful (1) for the plaintiff, either by itself, or through an agent, to engage in any lottery scheme, Deering's Code, § 319; (2) to send lottery tickets to San Francisco, 26 U. S. Stat. 465; (3) to sell these tickets in California, Deering's Code, § 321; (4) to collect of the citizens of California. money from the sale of the tickets, Deering's Code, § 321; (5) to receive money from

the sale of the tickets, Deering's Code, §§ 322–324. Should the courts legalize defendant's transaction, the plaintiff may continue his business in Old Mexico beyond the reach of the criminal law by appointing agents throughout this country and then compelling them to account for the money they receive, which belongs to the citizens where collected. The court finds the parties in *pari delicto*, and will leave them as it finds them. Each took part in an unlawful scheme to sell lottery tickets in California. These tickets expressed no value. The plaintiff has parted with nothing. Why should it be permitted to collect this money which belongs to the purchasers of tickets. Carry out the maxim, *in pari delicto, potior est conditio defendentis*, in equal fault, the stronger is the situation of the defendant. Only two cases can be found similar to the case at bar, *Lanahan* v. *Patterson*, 1 Flip. 410; *Udell* v. *Metcalf*, 5 N. H. 396. In the first case Patterson sold lottery tickets for Lanahan and gave his due bill for the money he had received. On refusing to pay the due bill, his principal sued him. The court held, under the laws of Tennessee, which prohibited the sale of lottery tickets, that the contract cannot be enforced. In the other case, the court held that the tickets were sent to be sold in violation of law and that both parties were at fault and that it would leave them where it finds them. Plaintiff contends that the agent cannot set up the illegality of the transaction as an excuse for not paying over the money. Our answer to this argument is (*a*) the perpetrator of a fraud can have no agent in his fraud in the proper sense of the term. (*b*) The plaintiff has not parted with anything of value. He furnished no value to defendant or to the purchasers of tickets. (*c*) The funds in the hands of the defendant, if any, belong to the purchasers of the tickets and not to plaintiff. The employment of an agent to sell tickets in a lottery is void. Mechem on

Agency, § 38; *Rolfe* v. *Delman,* 7 Rob. (N. Y.) 80; Mechem, § 541–45.

*Mr. C. Ira Krebs* and *Mr. S. H. Lewis,* for respondent.

An agent who has received money from, or in behalf of, his principal, cannot defeat an action brought by the principal to recover on the ground that the contract under which the money was paid, or the transaction from which it was realized, or the purpose to which it was devoted, was illegal. *Armstrong* v. *Exchange National Bank of Chicago,* 133 U. S. 433–470; *The Planters' Bank of Tennessee* v. *Union Bank of Louisiana,* 16 Wall. 483; *McBlair* v. *Gibbs,* 17 How. 232; *Brooks* v. *Martin,* 2 Wall. (U. S.) 70; Mechem on Agency, § 526; Dunlap's Paley on Agency, p. 62, par. 8; Ewel's Evans Agency, 37n–327n; Story on Agency (7th ed.), p. 620; Wharton's Com'ts on Agency and Agents, § 250; *Faikney* v. *Reynous,* 4 Burr. 2069; *Farmer* v. *Russell,* 1 Bos. & P. 296; *Armstrong* v. *Toler,* 11 Wheat. 258. The agent on receipt of the money of his principal becomes the trustee of the principal, and a new contract arises supported by a legal consideration. The illegal transaction has been consummated. The money has passed into the hands of a third party, who cannot take advantage of the original transaction. *Planters' Bank of Tenn.* v. *Union Bank of La., supra; McBlair* v. *Gibbs, supra; Brooks* v. *Martin, supra; Armstrong* v. *Exchange National Bank of Chicago, supra.* The only two cases counsel for defendant cited are not well considered cases, and the principle there enunciated was overruled in subsequent cases. *Bank* v. *Wallace,* 61 N. H. 24; *Armstrong* v. *Exchange National Bank of Chicago, supra.*

SMITH, J.:

The plaintiff is a corporation engaged in the lottery busi-

ness under the name of the Juarez Lottery, with head-quarters in Mexico. It delivered lottery tickets to defendant in San Francisco, to be sold. The defendant accounted to it for something over $25,000 of the proceeds of the sales of such lottery tickets, and paid over that amount, but retained and failed to pay over $1,682.75. The plaintiff sues to recover this balance for money had and received to plaintiff's use. The defendant, in his answer, claims the tickets were valueless, and that he is not liable. The case was tried by a jury, and after hearing plaintiff's evidence the court instructed the jury to bring in a verdict for the defendant. Motion for a new trial was made by plaintiff, and granted. From the order granting a new trial the defendant prosecutes this appeal.

The evidence of plaintiff proved that it furnished lottery tickets to the defendant, and that the defendant sold them for the plaintiff, and collected $1,682.75 which he refused to pay over to the plaintiff. The only question raised by the appeal is, can the plaintiff recover of the defendant the money collected by him from the sale of the lottery tickets which he received from plaintiff, and sold for it? The transaction took place in San Francisco. The laws of California were introduced in evidence, and, among other things, provide (Pen. Code, § 321): "Every person who sells, gives, or in any manner whatever furnishes or transfers to or for any other person any ticket, chance, share or interest, or any paper, certificate or instrument purporting or understood to be or to represent any ticket, chance, share or interest in or depending upon the event of any lottery, is guilty of a misdemeanor." It is not denied that the plaintiff and defendant together set about to deliberately violate this statute, and deliberately intended and contrived together to commit, and did commit, the crime inhibited by it.

The contention on the part of the respondent is that,

the defendant being an agent of plaintiff, and having received these lottery tickets as its agent, and having sold them, he cannot question the right of his principal to an accounting by reason of any defect in their title, or for the reason that in fact no value was parted with when the tickets were sold.    The proposition, as stated by respondent in his brief, is as follows: "An agent who has received money from or in behalf of his principal cannot defeat an action brought by the principal to recover it upon the ground that the contract under which the money was paid, or the transaction from which it was realized, or the purpose to which it was devoted, was illegal." Many authorities are cited which sustain this proposition.   See *Planters' Bank of Tennessee* v. *Union Bank of Louisiana,* 16 Wall. 483; *McBlair* v. *Gibbes,* 17 How. 232; *Brooks* v. *Martin,* 2 Wall. 70; Mechem, Ag. § 526; Story, Ag. p. 620; *Armstrong* v. *Bank,* 133 U. S. 433–470, 10 Sup. Ct. 450.   Many other cases are cited, and may be found, which, in a general way, sustain the proposition contended for by the respondent.

The real vice of the contention on the part of the respondent—and, it would appear, the real error committed by the trial court in granting the new trial—was in holding that the defendant was an agent of the plaintiff at all.   Both these parties, plaintiff and defendant, were engaged in the commission of crime, each actively participating in it.   Under our statute, both are principals in that act.   No contract between themselves could change their relations, so far as the law is concerned.   Each was actively aiding and assisting in the commission of a crime, and now, having committed the crime, and procured the fruits of the criminal enterprise, they come into the civil courts, and ask the agency of the law in a division and application of the proceeds of their criminal adventure. The question is, can this be permitted?   It is not simply

a case where the plaintiff, in good conscience, ought not to insist upon the bargain made through an agent with a third person, nor is it a transaction voidable on account of its being against public policy, but the transaction is criminal in itself,—criminal in California, where it was effectuated, and criminal in Utah, where the civil courts are asked to divide the proceeds of the crime. This, it seems to us, is the distinction between the cases cited by the respondent and cases which hold to the doctrine that the civil court, where it finds both parties in equal fault, leaves them in the same condition in which it finds them.

Two cases are cited by appellant which appear to be directly in point in this case: *Lanahan* v. *Pattison*, 1 Flip. 410, Fed. Cas. No. 8,036, and *Udall* v. *Metcalf*, 5 N. H. 396. Both these cases appear to be exactly alike. The one at bar, and the matter in controversy in each, was money received by a so-called agent for the purchase price of lottery tickets. It was held that the plaintiff, the lottery company, in neither case could recover. The employment of an agent to sell tickets in a lottery is void. See Mechem, Ag. § 38. Therefore, the relation never in fact exists. As we have already stated, both parties are principals. They are both in equal fault; and it would appear to be a monstrous doctrine if participants in crime may invoke the power of the civil courts to determine which of them is entitled to a particular share of the spoils resulting from their criminal adventure. If they may do this in a lottery case, there certainly can be no reason why it may not be done in a case where one steals, and the other receives and sells the stolen goods, there being an agreement to that effect in advance. If an action were filed for an accounting by the thief against the person with whom he had an agreement to receive and sell stolen goods, and who in fact so received and sold them, it is hardly possible that any civil court

would hesitate to dismiss such action upon the bare presentation of it. In fact, such cases have arisen, and the solicitors have been punished for contempt for bringing such matters to the attention of the civil courts, and the parties hanged. See *Everet* v. *Williams*, 2 Poth. Obl. (by Evans), 3; *Spalding* v. *Preston*, 21 Vt. 9.

We fail to see any reason why this case does not belong to exactly the same class. This money no more belongs to the plaintiff or defendant than if it had been stolen by one or the other of them, or both. They have simply obtained it by means of a criminal enterprise, and the degree of crime in no wise changes the relation of the parties to each other. In *Sykes* v. *Beadon*, 11 Ch. Div. 195, Lord Eldon said he would not sit to take an account between two robbers on Haunslow heath. No more will we sit to take an account between two thieves from San Francisco, and that is what we are asked to do here. We are clearly of the opinion that it is a matter which ought never to have been brought to the attention of any civil court. The order of the court below granting a new trial is reversed, and the cause remanded to the court below to dismiss the action.

MINER and BARTCH, JJ., concur in the result reached.