# CHARLESTON.

WILLIAM B. LYNCH, EXECUTOR, ETC. *et al.*

*v.*

DOLLY CATHERINE ARMSTRONG *et als.*

Submitted January 12, 1922.   Decided January 24, 1922.

1. APPEAL AND ERROR—*Statute of Limitations Runs from Date of Last Decree.*

Where the decree appealed from sets aside a prior decree, entered at the same term, the statute of limitations of one year begins to run, not from the date of the decree set aside, but from the date of the last decree, although such decree has not changed or otherwise affected the rights of the parties to the appeal. (p. 101).

2. SAME—*Obtained on Transcript of Record Instead of Original Papers.*

When a petitioner for an appeal presents with his petition a transcript of the record instead of the original papers in a cause as provided in section 5, chapter 135 of the Code, and obtains an appeal thereon, his appeal will not be dismissed on motion of the appellee because appellant did not first file his petition in the office of the clerk of the circuit court and give bond or make a deposit and have the original papers transmitted to the clerk or a judge of this court as provided therein. (p. 102).

3. PLEADING—*Right of Plaintiff to File Demurrer and Special Reply to Answer After Cause Has Been Submitted for Decision.*

An answer to a bill which is merely defensive of the rights alleged against respondent, though it may plead matters in estoppel of rights asserted against him in the bill, is not a

cross-bill or cross-bill answer, and though such answer prays that plaintiff may be decreed to be estopped by his acts and conduct pleaded, he is not prejudiced by the refusal of the court, after a cause has been submitted for decision, but before actual decision, to file his demurrer and special reply to such answer. (p. 104).

4. Contracts—*Concession in Contract No Basis for Decree Against Rightful Owners Not Parties to Such Contract.*

Plaintiff who by contract between himself and his coplaintiffs is conceded rights not belonging to them or him, but concededly belonging to others not parties to such contract, and from whom such plaintiff produces no right or title, is not entitled to the rights and interests conceded to him by the parties to the contract, as against the rightful owners of such rights, and he is not entitled to a decree against them based solely on the concession in such contract. (p. 104).

Appeal from Circuit Court, Harrison County.

Bill to determine the respective rights of plaintiffs and defendants to the estate, real and personal, of the late Adolphus Armstrong, deceased, and his deceased sister Louisa Ann Armstrong. Decree for appellees, and Isaac C. Ralphsnyder appeals.

*Affirmed.*

*F. E. Parrack, Osman E. Swartz* and *Harvey W. Harmer,* for appellees.

*Charles E. Hogg,* for appellant.

Miller, Judge:

The appellant is Isaac C. Ralphsnyder, one of the plaintiffs in the bill, and the appellees are defendants W. W. Shoch, Trustee, and Mary Abigal Shoch Batten.

The object of the bill was to determine the respective rights of plaintiffs and defendants to the estate, real and personal, of the late Adolphus Armstrong, deceased, and of his deceased sister Louisa Ann Armstrong, his sole heir, who left a will by which she undertook to dispose of the estate which came to her from her deceased brother. After his death and after her death much litigation ensued between conflicting claimants and devisees in an endeavor to deter-

mine who were the rightful heirs of said Adolphus Armstrong and who were entitled to his estate under her will, if a will, or as heirs of the said Louisa Ann Armstrong.

The bill sought to have said estate divided and distributed on the basis of three several contracts between plaintiffs, but in which appellees had not joined, dated respectively May 31, 1911, December 26, 1914, and March 27, 1915, purporting to be compromises between them of their conflicting interests. The bill contains allegations intended to deny the said W. W. Shoch, Trustee, and Mary Abigal Shoch Batten all participation in the distribution of said estate.

The answers of the appellees denied all the material allegations of the bill designed to deprive them of their rights as distributees of said estate, and pleaded certain matters of estoppel against the appellant Isaac C. Ralphsnyder, to whom by said contracts the parties thereto had undertaken to apportion their interests and the interests of their codefendants, the heirs at law of Elias Fisher, deceased, or their assigns.

After their answers were so filed with general replications thereto by the plaintiffs including the said Isaac C. Ralphsnyder, all of the said plaintiffs except the said Ralphsnyder withdrew their general replications, and a day was fixed by the court when all pleadings and proofs were to be submitted and the issues presented, and briefs were to be filed by counsel; and the case was accordingly submitted on the day so fixed.    Within the time so fixed for submission Ralphsnyder interposed no demurrer or special reply to the answers of appellees, nor were his demurrer and answers tendered until after the cause had been for several months in the hands of the court for final decision.

That portion of the decree of October 17, 1919, now appealed from, adjudged that appellees were, for reasons shown by the record, entitled to two and one-half percent of the estate of the said Adolphus Armstrong and Louisa Ann Armstrong which was conceded to them by the contract of February 28, 1917, signed by or on behalf of all the plaintiffs except the said Isaac C. Ralphsnyder, and moreover decreed that by his acts and conduct pleaded Ralphsnyder was estop-

ped to deny the rights and interests so decreed them, notwithstanding the provision in his favor in the contract of March 27, 1915, whereby plaintiffs stipulated that said Ralphsnyder was to take and receive the interests claimed by the heirs at law of Frank Batten, deceased, or their assigns, and the interests claimed by the heirs at law of Elias Fisher, deceased, or their assigns. How Ralphsnyder became entitled to these interests is not recited in the contracts, nor are his rights predicated upon any other agreement or title paper, It is argued that the parties to these contracts had the right to make him this concession, if they chose to do so, and that appellees have no rights dependent thereon. But why should the plaintiffs have undertaken in contracts to which appellees were not parties to concede Ralphsnyder their rights? Numerous grounds of estoppel are pleaded in their answers, among them that Ralphsnyder undertook to represent them in suits begun and prosecuted by him in Ohio and in West Virginia, and sought to buy their interests on one or more occasions for a mere pittance; bought conflicting interests while pretending to act for them without authority, and concealed from them the existence of one of the contracts pleaded, which provided that others with rights might come in and accept the benefits of the contracts and participate in the distribution of the estate according to their rights. With respondents' answer to the bill were exhibited numerous documents showing some of the matters of estoppel by deed and conduct of Ralphsnyder, which we think justified the decree appealed from, unless some right was denied him, which we are soon to consider.

Before considering the case on its merits, we are first called upon to dispose of certain motions interposed by appellees. The first was to dismiss Ralphsnyder's appeal, upon the ground that it was improvidently awarded. Application was made for the appeal on October 16, 1920, and the appeal was apparently allowed on the same day, from a decree of October 17, 1919. This decree set aside one of October 7, 1919, but the relief given appellees was in all respects the same as that given by the decree set aside, and counsel for appellees contend that the last decree was simply a re-entry

of the prior one, an affirmance of the former, and that their
rights were fixed thereby and as of the date thereof, and that
as there was no appeal therefrom, appellant's appeal was
barred by the statute of limitations of one year. Is this prop-
osition well grounded in law? We do not think so. The highest
judicial tribunal in the country has negatived counsel's prop-
osition, in the case of *Memphis* v. *Brown,* 94 U. S. 715. We
omitted to say that the decree appealed from was entered at
the same term that the decree set aside was pronounced. The
Supreme Court, by Mr. Chief Justice Waite, said in the case
referred to, that the court had the right to set aside the judg-
ment of March 2, during the term at which it was rendered
and to re-enter it as of the date when the motion to set it
aside was made, and that the writ of error was properly sued
out on the re-entered judgment.    The same court applied
this rule to *nunc pro tunc* orders and decrees, holding that
the statute began to run, not from the date to which the
order was made to relate, but from the date of the actual
entry thereof.    *Borer* v. *Chapman,* 119 U. S. 587. The rule
is so stated with citation of authorities in 3 C. J. 1051 et seq.
§§ 1050, 1051.    See also 9 Rose's Notes on United States
Reports (Rev. Ed.), p. 809, citing the cases following *Mem-
phis* v. *Brown, supra.*    So this motion will be overruled.

The next motion is predicated on the alleged failure of ap-
pellant to comply strictly with section 5 of chapter 135 of
the Code, relating to the transmission of the record in appeal
cases.    That section does prescribe the method of procedure
when an appeal is sought on the original papers in a cause.
Petitioner is required to first file his petition and a copy
thereof in the office of the clerk of the court where the judg-
ment, decree or order complained of was entered, and the
clerk is required, as provided thereby, to arrange the papers
and transmit them to this court or a judge thereof, but not
until petitioner has deposited the money for a transcript or
given bond as therein provided conditioned to pay for the
transcript, etc., if the petition is granted.    In this case
petitioner first procured a transcript of the record, which
he presented with his petition for appeal, and the appeal was
allowed thereon, the appeal docketed, and writs were issued

out of this court thereon.　　The purpose of the amendment to said section 5 in 1915 was to provide for application for appeals and writs of error without the expense of first obtaining a transcript of the record and to insure the prompt delivery of such transcript in case appellate process should be awarded.　　But if the petitioner chooses to incur the expense of a transcript in advance of obtaining the writ, he thereby satisfies the requirements of the statute.　　The application is *ex parte.*　　The appellee or defendant in error is not prejudiced.　　The statute gives him no right.　　A rule of the court permits him to file an opposition brief, but he is not deprived of doing that because the petitioner applies for appellate process on the transcript instead of the original papers.　　Section 2 of said chapter 135 gives absolute right to a party to a controversy to present his petition to the court or a judge thereof in vacation, and if he does so on the original papers, of course he must comply with the requirements of said section 5, but if he elects to present with his petition a transcript of the record, what good reason can there be for compliance with the provisions of section 5, the only purpose of which is to secure the prompt transmission of the transcript, if the prayer of the petition is granted. The Constitution, Article VIII, gives the court appellate jurisdiction of certain causes, upon petition assigning error, and of course the right of appeal is thereby conferred when such petition is presented with the record below showing error therein.　　The Constitution and statute give the right, and the statute prescribes the proceedings necessary to obtain an appeal, and being remedial, should be given a liberal construction.　　2 R. C. L. page 100, § 73; *Smith* v. *Duff,* 133 Am. St. Rep. 582; *Price* v. *Western Loan & Savings Co.,* 19 Ann. Cas. 589, 590, 591; *Charmley* v. *Charmley,* 110 Am. St. Rep. 827; *Columbia Ironworks* v. *National Lead Co.,* 127 Fed. 99, 64 L. R. A. 645; *Wilson* v. *Kryger,* 51 L. R. A. (N. S.) 760; *Douthwright* v. *Champlin,* Ann. Cas. 1917E, 512, 515. There having been substantial compliance with the statute in this case, the transcript obtained, appellate process issued, bond executed, the record printed and the cause matured for hearing thereon, it would amount to a denial of exact and even

justice to now dismiss the appeal. The ground relied on is not one of the specified grounds for dismissal prescribed by sections 16, 17 and 18 of chapter 135 of the Code. We therefore overrule the motion to dismiss.

We have left the disposition of the case on the several assignments of error. The first of these is that appellant was erroneously denied the right to file and have considered his demurrers and answers to the answers of appellees, with general replications thereto withdrawn by all the plaintiffs except the appellant. His general replications remained in the record and presented all issuable facts which he of right could interpose. His counsel concede this, unless the answers of appellees amounted to cross-bills with matter constituting claims for affirmative relief. We do not think these answers of appellees were cross-bills. While they deny the rights of Ralphsnyder pleaded in the bill and set up matters of estoppel against him, they were only defensive to the bill. His entire claim to the Batten interests to which appellees were entitled was based wholly on the contracts between coplaintiffs pleaded in the bill, and to which appellees were not parties nor represented by any one in authority. He presented no title to their interests; and it was their specific interests which the contracts pleaded undertook to concede to him. It is said these plaintiffs had the right to make this concession if they chose to do so. But how could they confer title they did not have, by such concession? The title of appellees came by consent or devise and assignment from Adolphus Armstrong and Louisa Ann Armstrong, of interests which Ralphsnyder had concededly sought to buy from them, but had failed to obtain. Their interests were indeed larger than the two and one-half percent decreed them, but by the contract of February 28, 1917, pleaded by appellees in their answer, the same parties plaintiff to the bill, except Ralphsnyder, conceded two and one-half percent of the entire estate to them. The contracts relied on by appellant could not be construed as interpreted to take from appellees their rights and give them to Ralphsnyder, but as conceding them to him if he should thereafter produce right and title thereto, which he never did nor pretended to have

done.    We think appellees answer to the bill constituted complete defenses to Ralphsnyder's claims to the Batten interests and independently of the matters of estoppel pleaded, that Ralphsnyder was without the shadow of title thereto.

We are therefore of opinion that Ralphsnyder was without right and was not prejudiced by the rejection of his demurrers and answers, and that the decree appealed from but gave appellees the interests to which they were entitled by inheritance and by contract with plaintiffs, and that it should be affirmed.

*Affirmed.*