## OBRADOVICH v. WALKER BROS. BANKERS.

No. 5007.   Decided November 16, 1932.   (16 P. [2d] 212.)

*King & King*, of Salt Lake City, for appellant.

*Ingebretsen, Ray & Rawlins* and *H. L. Mulliner,* all of Salt Lake City, for respondent.

EPHRAIM HANSON, J.

This action involves the title and ownership of two savings accounts, Nos. 36944 and 40638, carried in Walker Brothers Bankers in the names of the plaintiff, Dan Obradovich, and his wife, Perka (now deceased). Upon the filing of the complaint, the defendant, Walker Brothers Bankers, entered its appearance, disclaiming any interest in said funds except as a depositary thereof, admitting its obligation to pay the same with interest to the parties entitled thereto. It alleged that the plaintiff and one Millie Evancovich, as the executrix of the estate of Perka Obradovich, asserted conflicting claims to the ownership of such funds and prayed that Millie Evancovich as such executrix be brought in as a party defendant. An order was accordingly entered interpleading said executrix and relieving the defendant bank from further pleading in the cause and exonerating it from all liability in respect to such fund except to pay it out in accordance with the final order and judgment of the court pertaining thereto. Millie Evancovich as such executrix thereupon filed her answer and counterclaim alleging that the money in such savings accounts had been earned by Perka Obradovich during her lifetime in conducting boarding houses and in furnishing meals and refreshments, thereby earning large sums of money which were deposited in such savings accounts in the joint names of plaintiff and the decedent, that at the time of decedent's death she had not parted with the title or ownership to the said funds and never consented or agreed that the plaintiff might have more than one-half thereof, and prayed for judgment that one-half of the funds in question be adjudged and decreed to be the property of the decedent's estate. Plaintiff in his reply denied the material allegations of the counterclaim. The case was tried to the court without a jury, and on July 2, 1929, the court made its findings, conclusions of

law, and decree in favor of the interpleaded defendant, and among other things found as follows:

"That both Dan and Perka Obradovich earned said moneys in said savings accounts; that from the time of his marriage to Perka up to the time of her death said Dan Obradovich worked industriously, and said Perka Obradovich also worked in keeping roomers and boarders and also did much business in supplying her roomers and boarders and others with liquid refreshments, and in this manner and by the work of both Dan and Perka the moneys in said accounts were accumulated, and the court has no evidence before it upon which it can find exactly or approximately how much of said moneys were earned by Dan or how much by Perka, save as indicated by the form of said deposits.

"That all the business of depositing said moneys in said bank was attended to by said Dan. Said Perka who could neither read nor write any more than her own name 'Perka' had nothing further to do with said depositing than merely to sign her name 'Perka' on the deposit card and put her finger print thereon."

Later, at the instance of the interpleaded defendant, on August 31, 1929, the court made and filed amended findings, conclusions, and decree. The amended findings set forth in detail the manner of opening the accounts; set forth that the withdrawals therefrom were by plaintiff after the death of the decedent; and also set forth the amounts of such accounts. The amended judgment decreed to the interpleaded defendant one-half of the total amount on deposit at the time of the death of decedent.

From this judgment the plaintiff appeals. He contends that the finding that one-half of the funds in question was earned by or belonged to Perka Obradovich, the decedent, during her life, is not supported by, but is contrary to, the evidence; that, if any part of such funds was earned by her, the evidence shows that the same was acquired by the sale of intoxicating liquors, an illegal and unlawful trade, and, therefore, the executrix is not entitled to an accounting; that the court erred in the admission of certain evidence; and that, if Perka ever owned any part of the money deposited,

it became the property of her husband, the survivor, upon her death.

We are met at the outset by a motion to dismiss the appeal upon the ground that no undertaking on appeal, cash deposit, or stipulation waiving bond on appeal was filed within five days after the service of notice of appeal as provided by Comp. Laws Utah 1917, § 6996; that ■ the transcript on appeal was not filed within thirty days after the appeal was perfected, if any appeal was in fact perfected; and that notice of appeal was not filed within six months after entry of the judgment.

The notice of appeal was served December 28, 1929, and filed on January 29, 1930. The certificate of the clerk recites that a stipulation signed by the attorneys for both plaintiff and defendant, waiving bond on appeal, was filed January 29, 1930. In the transcript we find a written stipulation signed by the attorneys for the respective parties, but it is not properly before us. The statute prescribes what shall constitute the judgment roll, and, unless included in or by apt reference made a part of a bill of exceptions, neither the undertaking on appeal, the cash deposit, the waiver, nor the oath of poverty in lieu thereof, constitutes any part of the judgment roll and cannot be considered by us. *Dayton* v. *Free*, 46 Utah 277, 148 P. 408; *Taylor* v. *Paloma G. & S. Mining Co.*, 51 Utah 501, 171 P. 147; *Fisher* v. *Bonneville Hotel Co.*, 55 Utah 588, 188 P. 856, 12 A. L. R. 255. We thus have before us merely the certificate of the clerk that the stipulation waiving bond on appeal was filed January 29, 1930.

Comp. Laws Utah 1917, § 6996, provides:

"An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered a notice stating the appeal from the same, or some specific part thereof, and serving a similar notice on the adverse party or his attorney. The order of service is immaterial, but within five days after service of the notice of appeal an undertaking shall be filed or a

deposit of money be made with the clerk, as hereinafter provided, or the undertaking be waived in writing.  *  *  *"

This section does not require the waiver to be filed within five days or any other specified time after service of notice of appeal, and the fact that the waiver was not filed within such period would not justify the dismissal of the appeal. *Newman* v. *Maldonado,* 3 Cal. Unrep. Cas. 540, 30 P. 833. This is in harmony with the holding of this court that an order extending time, signed before but not filed until after the expiration of the original time limit, is valid. *Elliot* v. *Whitmore,* 10 Utah 253, 37 P. 463. Nor does the clerk's certificate that the waiver was filed January 29th raise any presumption that it was not entered into at an earlier date.

Assuming it were properly made to appear that the giving of an undertaking on appeal was not waived within five days after service of notice of appeal, yet the appeal could not, for that reason, be dismissed. Under the provision of the statute just quoted, the filing of the undertaking within the time limited is not jurisdictional. *Hoagland* v. *Hoagland,* 18 Utah 304, 54 P. 978. In the Hoagland Case appellant filed an affidavit of poverty but gave no undertaking for costs on appeal. On motion to dismiss the appeal this court held that, while the filing of such affidavit relieved the appellant of the payment of costs or fees otherwise required to be paid on taking the appeal, it did not relieve the appellant from the necessity of filing an undertaking for costs which respondent might incur, but the motion to dismiss was denied upon condition that such undertaking be filed in this court. At the next session of the Legislature an amendment was adopted dispensing with an undertaking for costs where such affidavit is filed. The undertaking for costs on appeal is for the benefit of respondent and may be waived by the respondent. The respondent having waived it, under the present wording of our statute it is immaterial at what date she did so.

Under the former wording of the statute a different result might follow. The quoted section was copied from California, and, as originally adopted, after the words "the order of service is immaterial" it provided that "the appeal is ineffectual for any purpose unless within five days," etc. Laws of Utah 1884, p. 304, Comp. Laws Utah 1888, § 3636. Under such provision the filing of the undertaking, or the other alternatives in lieu thereof, within the time limited was just as essential as the filing of the notice of appeal, and a waiver after the expiration of that time would be of no avail. *Perkins* v. *Cooper*, 87 Cal. 241, 25 P. 411; *Crowley Launch & Tugboat Co.* v. *Superior Court*, 10 Cal. App. 342, 101 P. 935; *Mathis* v. *Superior Court*, 50 Cal. App. 652, 195 P. 711; *Pratt* v. *Jarvis*, 8 Utah 5, 28 P. 869. Such provision was eliminated in the revision of 1898. Rev. Stat. Utah 1898, § 3305.

The next ground urged for the dismissal of the appeal is that the transcript was not filed in this court within thirty days after the appeal was perfected. The register of actions shows that the transcript on appeal was filed March 1, 1930, while an indorsement on the bill of exceptions indicates that the bill was filed March 4, 1930. A filing on either March 1st or March 4th is certainly not within thirty days from January 29th, and were the filing within thirty days jurisdictional, the appeal would have to be dismissed. But it is not jurisdictional. The court, in its discretion, may dismiss an appeal for such reason, Comp. Laws Utah 1917, § 7009, but where the delay in filing is inconsiderable, resulting in no delay of the hearing, and the motion to dismiss is not made until after appellant has prepared and filed his abstract and brief, and the respondent suffers no prejudice, the objection is merely technical and the appeal will not be dismissed on such ground. *Robinson* v. *U. P. R. R. Co.*, 70 Utah 441, 261 P. 9.

It is next urged that the appeal was not taken within six months from the entry of the judgment. The notice of appeal was filed January 29, 1930, more than six months

after the entry of the original decree on July 3, 1929, but less than six months after the entry of the amended decree on August 31st. The respondent contends that "the amendment to the decree was not such as to constitute a new decree from which a new appeal could be taken," citing *Cody* v. *Cody*, 47 Utah 456, 154 P. 952; 3 C. J. 1050, § 1047, and other cases tending to support the rule laid down in Corpus Juris. The rule as there stated is:

"The general rule as to the running of the statute of limitations holds good when a judgment is amended or modified in particulars not changing its character; but where the modification or amendments is in some material matter, the statute begins to run from the time of the modification or amendment."

The rule that the time for taking an appeal is not enlarged by an amendment or modification not changing the character of the judgment is supported by the authorities. *Cody* v. *Cody*, supra; *Schulze* v. *Oregon R. R. & Nav. Co.*, 41 Wash. 614, 84 P. 587; *Alabama Coal & Nav. Co.* v. *State*, 54 Ala. 36; *Besser* v. *Alpena Circuit Judge*, 155 Mich. 631, 119 N. W. 902; *Fidelity-Philadelphia Tr. Co.* v. *Brown*, 181 Minn. 466, 233 N. W. 10; *Savings & L. Soc.* v. *Horton*, 63 Cal. 310.

This rule, however, has no application where a judgment has been amended in a material matter or where a new judgment is entered superseding the former judgment. *Fidelity Philadelphia Tr. Co.* v. *Brown*, supra; *Lynch* v. *Armstrong*, 90 W. Va. 98, 111 S. E. 489; *Hewey* v. *Andrews*, 82 Or. 448, 159 P. 1149, 161 P. 108; *Billson* v. *Lardner*, 67 Minn. 35, 69 N. W. 477; *Hayes* v. *Silver Creek & P. Land & Water Co.*, 136 Cal. 238, 68 P. 704; *Union Guardian Trust Co.* v. *Jastromb* (C. C. A.) 47 F. (2d) 689; *Pepe* v. *Curti* (Sup.) 114 N. Y. S. 415; *Corbet* v. *Union Dime Sav. Inst.*, 67 Misc. 175, 122, N. Y. S. 268; *Forrester* v. *Cook*, 77 Utah 137, 292 P. 206.

The amended decree provides:

"Good cause appearing therefore and in order to make more definite the decree herein, the court makes and files this its amended

decree, which is substituted for and takes the place of the decree heretofore filed herein on or about July 3, 1929."

Upon the entry of the amended decree the original decree was superseded. The amended decree then became the only judgment in the cause, and an appeal taken therefrom within six months from its entry was in due time. *Lynch* v. *Armstrong,* supra. The motion to dismiss the appeal is denied.

Considering the case on its merits, plaintiff and the decedent married at Ely, Nev., in August of 1913. Plaintiff was a miner, working for wages, on a contract, or on leases, and moving from place to place to obtain employment. Shortly after his marriage, the mines at Ely having closed down, he and his wife moved to Midvale, Utah, thence to numerous mining centers in Utah, Colorado, Arizona, Montana, and Wyoming. He came to Salt Lake City in 1920, and in the same year he went to Scofield, Utah, where he remained until 1925 when he went to Clear Creek, Utah, and returned to Salt Lake City in 1927, where the wife died July 20, 1927.

Upon first coming to Salt Lake City, on October 2, 1920, the sum of $1,200 was deposited with Walker Brothers Bankers and a certificate of deposit issued. This certificate of deposit was by the decedent intrusted to her sister Millie Evancovich, the interpleaded defendant, and was by her lost. The evidence does not disclose with certainty to whom this certificate was issued, but a new certificate was obtained May 9, 1922, payable to "Dan or Perka Obradovich." On March 21, 1923, savings account No. 36994 was opened in the name of "Dan or Perka Obradovich" with a deposit of $2,500, and a notation was made on the deposit card "Pay to either or survivor." On December 24, 1923, savings account No. 40638 was opened with a deposit of $2,574.40, also in the names of "Dan or Perka Obradovich." Additional deposits were made from time to time in both accounts, one on January 31, 1924, including the duplicate

certificate of deposit for $1,200, previously mentioned. No withdrawals were made from either account until after the death of Mrs. Obradovich.

Appellant first contends that the finding that any portion of the money on deposit in these two accounts was earned by the decedent is not supported by, but is contrary to the evidence. With this contention we do not agree. There is a substantial conflict in the evidence, but in our opinion the evidence is ample and sufficient to support the findings of the trial judge in this respect.

The plaintiff testified that all of the funds so deposited had been earned by himself personally; that none had come from his wife, and none had belonged to her; that she had never conducted a boarding house, nor furnished meals, lodgings, or refreshments for compensation, though friends and relatives had frequently stopped with them; that ever since their marriage her health had been such that she was unable to do so, or even, during much of the time, to perform her ordinary household duties. A number of witnesses corroborated his testimony as to the state of the wife's health while living at Scofield and Clear Creek, and that she did not conduct a boarding house or furnish meals, lodgings, or refreshments for compensation while in those places. On the other hand, the interpleaded defendant, who seems also to have had a migratory career, testified that she had been in Midvale, Butte, and Scofield while the Obradovich couple were there residing, and that in each of such places the decedent had a number of boarders and lodgers; that she had assisted in making the beds for the lodgers; and that she had been in the Obradovich home in Butte and in Scofield when the decedent was serving drinks and taking in money for them. She also testified that, when plaintiff and decedent came to Salt Lake City in 1920, they came to the home of the witness, and that decedent, who claimed to have $1,100 or $1,200, handed the witness her pocketbook for safe keeping; that later she called for the pocketbook,

and opening it, gave money to Mr. Obradovich, directing him to deposit it in Zion's Savings Bank or in Walkers; that the certificate of deposit for $1,200 was then intrusted to her by the decedent, was lost, and a duplicate obtained. She also testified that for some weeks before the death of decedent she had stayed at witness's home in Salt Lake City; that the witness saw $750 in the decedent's possession, and that, when Mr. Obradovich returned from a trip to Contact, Nev., the decedent gave him some money suggesting that he put it in the bank; that, while stopping at her home, the decedent had in her possession several bank books, one on Walkers and one on the Deseret Bank, but she did not see the names of the banks on the others as decedent "kept them in her hands." Five different witnesses testified to having boarded with decedent at Scofield, paying $55 per month for board, lodging, and washing; that she had as many as six or seven boarders at a time; and that many other persons came to her for meals and drinks. Another witness who had known the decedent from childhood testified that the decedent had three or four boarders in Butte, that while at Kellogg, Idaho, she had no room for lodgers but did furnish meals and drinks to the miners who frequented her place. A storekeeper at Scofield testified that the decedent had made purchases of provisions and raisins in large quantities, which the trial court might well have considered as supporting the case of the interpleaded defendant. There is also evidence that, when the savings account was garnisheed in 1923, the plaintiff asserted that the money did not belong to him but to his wife, and that she had made it running a boarding house in Scofield, and that she had run a boarding house from the time of their marriage. The plaintiff did not deny making such statement.

The evidence shows that the plaintiff was industrious and successful in obtaining employment. To substantiate his claim that the funds in question were his personal earnings he testified that at the time of his marriage he had

"around about" $2,000; that he also had a house which he sold for $600; that he later built another house which he sold for $1,000; that he was employed in the various places to which he moved, giving the approximate length of employment and approximate rate of compensation. This testimony is supplemented by statements from certain of his employers showing the amounts earned by him while in such employment. From these statements it appears that, while employed at Ray, Ariz., in a copper mine for 30 months, his earnings were $4,869.69, an average of $162.32 per month; at Kellogg, Idaho, in the Bunker Hill Mine in 17 months he earned $2,019, an average of $118.76 per month; at Scofield in the Union Pacific Mine in 33 months he earned $5,826,89, an average of $176.57 per month; at Clear Creek in 21 months he earned $2,484.50, an average of $123.03 per month. From this counsel has compiled a statement which he claims, after making deductions for the plaintiff's reasonable living expenses and disbursements of every character, establishes that the plaintiff must have accumulated from such earnings at least the amount of these savings accounts. We do not deem such evidence conclusive. It is impossible from such testimony to compile an accurate statement of his earnings, for the reason that he does not attempt more than an approximation as to either the length of his employment or the rate of compensation. Thus, in his first employment after marriage he worked "a month and a half or two months." In the next "three or four months" at $2 or $2.25 a day. In another place he worked "about" eight months. On certain contract work he "guesses" he worked from October to March 1st, making "maybe" $150 a month. On other contract work he "guesses" he made $125 or $150 a month. On still other contract work he was employed "two or three months" making "around $225 or $250 a month." And so throughout his entire testimony It is undoubtedly as definite as could reasonably be expected from one who had not kept an accurate record, but the variation between the maximum and minimum amounts that might be

computed therefrom is so great that it is impossible to even approximate the amount of his earnings. At times he specifies the daily wage, yet no mention is made of "idle time." That there was much idle time is apparent from the statements of the employers. At Ray, Ariz., he testifies the minimum wage was $5.75 per day which would be $172.50 per month of 30 days, yet his monthly wage as shown by the statement of his employer ranged from $94.51 to a maximum of $249.29, and was for many months very close to $120 per month. The statement of his earnings at the Bunker Hill Mine in Kellogg shows the number of days worked in each month, and, disregarding the first and last months as there is nothing to show at what date he went to work in the first month, or on what date he quit in the last month, shows that he worked from 13 to 28 days in a month. He testified that at Clear Creek his earnings were from $175 to $200 a month, yet the statement from his employer shows an average of but $123.03. Nor could the $1,000 received from the sale of a house be considered as income, for there is no evidence as to its cost and nothing to indicate whether it was sold at a loss or at a profit.

From the testimony of respondent's witnesses that the decedent had at times six or seven boarders each paying $55 per month, the trial court might easily have concluded that her earnings from the boarders, exclusive of earnings from meals and drinks served to others, at times exceeded the earnings of the appellant. Taking all the evidence into consideration we do not see how the trial court could have found other than it did, that both plaintiff and the deceased had earned said moneys in said savings accounts, and that there was no evidence upon which the court could find exactly or approximately how much of said money was earned by the plaintiff or how much by the decedent.

Appellant next contends that, if any portion of such fund was earned by the deceased, it was acquired by the sale of intoxicating liquor, an unlawful and illegal occupation, and

the executrix is therefore not entitled to an accounting, and that a litigant cannot maintain a demand connected with an illegal transaction where he requires the aid of the illegal transaction to establish his case. He cites *Mexican International Banking Co.* v. *Lichtenstein*, 10 Utah 338, 37 P. 574, and *Overholt* v. *Burbridge*, 28 Utah 408, 79 P. 561; also authorities from other jurisdictions supporting the general proposition that the courts will not enforce a cause of action arising out of an illegal transaction nor entertain an action for a division of the proceeds of such a transaction. This is undoubtedly the rule, and this court has gone farther, holding that not only must the action fail where the evidence of plaintiff discloses that his cause is based on an illegal or immoral transaction, but that the defendant may allege and prove the illegality or immorality of the transaction, and the court will then refuse its aid to either party, leaving them where it finds them. *Haddock* v. *Salt Lake City*, 23 Utah 521, 65 P. 491. But this rule has no application here. The illegal transactions were closed, and neither party is here seeking the aid of the court in enforcing any illegal contract. As stated by the Supreme Court of the United States:

"When the illegal transaction has been consummated; when no court has been called upon to give aid to it; when the proceeds of the sale have been actually received, and received in that which the law recognizes as having had value; and when they have been carried to the credit of the plaintiffs, the case is different. The court is there not asked to enforce an illegal contract." *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 499, 21 L. Ed. 473. *Overholt* v. *Burbridge*, supra.

There is no merit in this contention.

Appellant also assigns as error the admission of certain evidence over his objection. About six weeks prior to her death the decedent made a will bequeathing to her niece Bessie Evancovich, daughter of respondent, the sum of $4,000 and the residue of her estate to her husband, the appellant, and naming the respondent execu-

trix. While testifying, the niece was asked to relate a conversation between her Aunt Perka and her Uncle Dan, to which appellant made the objection that it was "irrelevant and immaterial, self serving declarations on the part of the deceased." The objection being overruled the witness replied: "Well, she said I wouldn't need any insurance because she had worked many years and saved her money so that she could leave it for me and so that I could have an education and not be like she was." She was then asked: "What if anything did your Uncle Dan say to that?" to which she replied: "He asked her how much of her money she was going to leave me, and she told him she was going to leave a large part of her money for me; he told her he wanted to know, because he wanted to leave $1,000 of his own money to me, additional to that." Appellant now for the first time contends that this testimony was incompetent under the provisions of Comp. Laws Utah 1917, § 7123, subd. 3. This section provides:

"The following persons cannot be witnesses: * * *

"3. A party to any civil action, suit, or proceeding, and any person directly interested in the event thereof, * * * when the adverse party to such action, suit or proceeding claims or opposes, sues or defends as * * * executor or administrator, heir, legatee or devisee of any deceased person, * * * as to any statement by, or transaction with, such deceased * * * person, or matter of fact whatever, which must have been equally within the knowledge of * * * such * * * deceased person, unless such witness be called to testify thereto by such adverse party, so claiming or opposing, suing or defending in such action, suit, or proceeding."

It will be observed that the objection made only goes to the testimony which might be responsive to the question to which the objection was made. In this connection it should also be noted that no objection was interposed to the competency of the witness. The objection being overruled, the appellant is entitled to a review of the ruling only upon the grounds stated and pointed out by his objection, which were irrelevancy and immateriality and "self serving statements

on the part of the deceased." The objection was properly overruled, for the proffered evidence was both relevant and material. As to the objection that it was self-serving, it is sufficient at this time to say that the statement of the decedent, when acquiesced in by the appellant, as there is evidence to show it was, became in effect an admission on the part of the appellant. The rule is well settled that a party desiring the protection of the statute here invoked by the appellant must make a proper and seasonable objection to the competency of the witness. Under the statute it is the witness and not the proffered testimony which is incompetent. Therefore the objection must be specifically directed to the incompetency of the witness and not to the proffered testimony. 12 Enc. Ev. pp. 1042, 1046. Though we assume the witness because of her interest to be incompetent by reason of the statute to testify in this case, yet, under the state of the record we are satisfied that question is not before us. The question not having been raised in the trial court, we do not feel at liberty to pass on the question now argued by appellant in this court for the first time.

Finally it is contended that the judgment should be reversed for the following reason:

"Upon the proven facts in the case and the law applicable thereto, if Perka Obradovich ever owned any part of the money deposited, it became the property of her husband, the survivor, upon her death."

Such contention is made for the first time in this court. It was not upon this theory that the case was tried, nor is such theory supported by the pleadings or the evidence. The mere fact that a person owning a fund deposits the same in the name of himself and another, without more, does not show either a gift or that the depositor intended to make such other a joint owner of the fund. *Holman* v. *Deseret Sav. Bank*, 41 Utah 340, 124 P. 765; *Denigan* v. *Hibernia Sav. & L. Soc.*, 127 Cal. 137, 59 P. 389; *Denigan* v. *San Francisco Sav. Union*, 127 Cal. 142, 59 P. 390, 78 Am. St. Rep. 35; *In re Bolin*, 136 N. Y. 177, 32 N. E. 626; *Robinson* v.

*Mutual Sav. Bank,* 7 Cal. App. 642, 95 P. 533. We have neither an allegation nor any evidence of any contract or agreement on the part of the deceased vesting in her husband any interest in the funds so accumulated and deposited by her. As we have seen, the form of the deposit does not effect that result. Appellant claimed the fund, not upon the ground that the deceased by any act or agreement had vested in him an interest in funds formerly belonging to her, but on the ground that the entire fund originally belonged to him; that he had never parted with his title to it; and that he owned the same, not because of, but notwithstanding the manner in which it was deposited. His position is thus stated in his brief:

"The evidence conclusively shows that plaintiff opened both bank accounts involved and made every deposit in these accounts, and every withdrawal from them; that he provided that the money might be paid to himself or wife in order to protect the latter in the event of his death; that his wife could neither read nor write and was wholly incapable of transacting business of this kind; that the money was owned and earned by him; that he never made a gift of any part or portion of it to his wife; that he at all times retained possession of the bank books issued to him at the time the accounts were opened, and had them in his possession at the time of the death of his wife. Under these circumstances together with the undisputed evidence that the deceased never owned, earned or deposited any part of the money actually deposited by the plaintiff, we respectfully insist that the deceased had no right, title or ownership to any part of the money at the time of her death."

That a litigant, having tried his case on one theory in the lower court, cannot be permitted to change his theory on appeal, must be regarded as settled in this jurisdiction. *Evans* v. *Shand,* 74 Utah 451, 280 P. 239. What was there said need not be here repeated.

Finding no error in the record, the judgment is affirmed. Respondent to recover costs.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.